**Dana Michelle ALDRICH Appellant,**

v.

**The STATE of Texas.**

**Nos. 2066–01, 2067–01.**

Court of Criminal Appeals of Texas, En Banc.

May 14, 2003.

---

Michael E. Miller, Dallas, for Appellant.

Christina O'Neil, Asst. DA, Dallas, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The appellant pleaded guilty to two indictments for impersonating a public servant, one of which alleged that she demanded that someone open a door so that she could arrest the occupants of a room, and the other of which alleged that she told someone else to turn around and be arrested. She pleaded true to allegations of a prior felony conviction. Her written judicial confessions were received in evidence. There was no plea-bargain agreement. Her oral testimony was that she falsely claimed to be a police officer so that she could get back into a motel room where the other people were. The court found that the evidence was sufficient to prove the appellant guilty, and it set the case for "sentencing" three weeks later.

When the parties returned to court, a different judge was presiding. The appellant testified that she still wanted to plead guilty and be sentenced by the court, and that she wanted probation so that she could take care of her grandmother. Her counsel asked her if she wanted to say anything else. She began by admitting "that I said I was a police officer, I am guilty of saying that," but she denied tell-

ing anyone "to turn around and place their hands behind their back." She told the court about being arrested, and that she told the officers she "did it to save myself because the guys were trying to rape me." Then she related her conversation with the motel manager.

The court interjected, "You've already pled guilty. I can't find you not guilty."

The appellant replied, "No, I'm guilty of saying it."

The court said, "I'm just trying to decide what I should do to you."

The appellant repeated, "I'm guilty of saying it."

Then she testified about her criminal history, which included a deferred-adjudication probation for burglary, which was revoked after she committed another felony and a misdemeanor.

She called her employer and elicited his hearsay testimony about her out-of-court description of her offenses. This description differed significantly from the appellant's testimony. She had told her employer that she went to the motel to attend a party, but she "found out she was the only party," and there were no "other girls.... They weren't there so she just wanted to go. That's when she said that." That is, she told her employer that she impersonated a police officer in order to escape from the motel room, although she testified when she pleaded guilty that she had impersonated a police officer to get back into the motel room.

After hearing arguments, the judge simply noted appellant had previously received deferred adjudication for a prior offense, her probation had been revoked for that offense, and he did not consider her to be a good candidate for probation. The court sentenced the appellant to five years' imprisonment. After being sentenced, appellant again pleaded with the court that she did not "deserve to go back to TDC because I just said those words" and that she "didn't know what else to say ... at the time." The visiting judge, however, refused to reconsider his decision.

On appeal she argued that the evidence raised the defense of necessity. She claimed, "The court (unknowingly) abused its discretion in not rejecting appellant's plea of guilty,"[1] and that she did not receive effective assistance of counsel. The divided court of appeals affirmed. The petition on which we granted review raised two issues.

I.

The first issue is whether, when a defendant has waived trial by jury and pleaded guilty, a trial court has a duty to conduct some sort of proceeding when evidence that is inconsistent with guilt is introduced. The appellant would call such a proceeding "a *Moon* review," referring to *Moon v. State,* 572 S.W.2d 681 (Tex.Cr.App.1978). Our opinion in *Moon* was not long:

The appellant asserts that the evidence is insufficient to sustain his conviction for murder and his plea of guilty should have been withdrawn and a plea of not guilty should have been entered for him by the trial court. Although the appellant made a judicial confession sufficient to sustain the conviction for murder, additional evidence, which was not withdrawn, clearly raises the issue of self-defense and voluntary manslaughter. Therefore, the only question presented for review is whether the appellant's plea of guilty should have been withdrawn by the court and a plea of not guilty entered.

In a long line of authorities this Court has held that when the evidence intro-

---

1. *Aldrich v. State,* 53 S.W.3d 460, 466 (Tex. App.-Dallas 2001).

duced makes evident the innocence of the accused or which reasonably and fairly raises an issue as to such fact and such evidence is not withdrawn, the trial court is required on its own motion to withdraw the defendant's guilty plea or nolo contendere plea and enter a not guilty plea for the defendant. [Citations omitted.] This rule has been recognized and applied even when a jury has been waived and the plea is before the court without a jury. [Citations omitted.]

Prior to January 1, 1966, the effective date of the 1965 Code of Criminal Procedure, the rule was properly applied when the jury had been waived and a plea of guilty entered before the court as well as when a plea of guilty had been entered before a jury. Prior to the effective date of the 1965 Code of Criminal Procedure, a defendant could not waive a jury and enter a plea of not guilty before the court. Article 11, V.A.C.C.P. 1925. If the defendant waived a jury trial and entered a plea of guilty before the court and it became necessary for the court to withdraw the defendant's plea of guilty, the court was required to impanel a jury to hear the not guilty plea. [Citation omitted.]

The 1965 Code of Criminal Procedure provides that a defendant may waive a jury trial and enter a plea of not guilty before the court in all except capital cases. Articles 1.13 and 1.14, V.A.C.C.P. There now seems to be no valid reason for the court to withdraw the guilty plea and enter a plea of not guilty for the defendant when the defendant enters a plea of guilty before the court after waiving a jury. It is the duty of the trial court to consider the evidence submitted and as the trier of the facts the court may find the appellant guilty of a lesser offense and assess the appropriate punishment or it may find the defendant not guilty. It would serve no purpose to withdraw the plea of guilty and enter a not guilty plea. Those cases in which this Court has reached a different result are overruled to the extent they conflict with the opinion in this case.

The appellant has tried to turn *Moon* on its head by saying that it requires a court in such a circumstance "to ascertain whether the plea is voluntary or not and whether the defenses the pleader asserts contain any validity .... [Sh]e ha[s] called this a '*Moon* review.'" [2]

*Moon* did not impose a new requirement on the trial court; it removed an old requirement. It did so because "it is apparent that the doctrine requiring a trial court to *sua sponte* withdraw a guilty plea when evidence was adduced that either made evident the defendant's innocence or reasonably and fairly raised an issue as to his guilt was rooted upon the proposition that the trial court was vested only with the authority to resolve legal questions." [3] That is to say, when only juries could decide fact issues in a felony case, the raising of a fact issue required the summoning of a jury. When trial courts gained the fact-finding authority, there was no reason for them to do anything more than "consider the evidence submitted and as the trier of the facts" [4] decide that the evidence did not create a reasonable doubt as to guilt, or "find the appellant guilty of a lesser offense and assess the appropriate punishment or it may find the defendant not guilty," [5] just as a jury would have done under the pre–1966 procedure.

---

**2.** Petition, at 9.

**3.** *Moon,* at 687 (Phillips, J., concurring).

**4.** *Moon,* at 682.

**5.** *Ibid.*

It is simply incorrect to read *Moon* as requiring anything more than a decision that a guilty-pleading defendant was guilty as he pleaded, guilty of a lesser included offense, or not guilty. Whether to undertake any additional inquiry into the voluntary and knowing nature of the plea was left "solely within the province of the trial court." [6]

*Moon* did not create a requirement of a review proceeding in the course of a plea of guilty. It merely recognized the obvious duty of a court to consider the evidence that is before it.

The problem in this case is not the failure to provide some "*Moon* review" that *Moon* does not require. It is that the visiting judge mistakenly thought that the judge who took the guilty plea three weeks earlier had found the defendant guilty as she pleaded—which would have been one of the outcomes that *Moon* actually requires when a court hears evidence that raises an issue of guilt. When the judge revealed his mistaken understanding by saying, "I can't find you not guilty," the appellant's only response was to testify, "No, I'm guilty of saying it." Her counsel said nothing.

Our rules for appellate review require:

As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; ... and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.[7]

This rule restates Texas law that has always been thus, and that is similar to the law of every state and of the United States.[8]

We have previously recognized two general policies for requiring specific objections. "First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony." Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite.

For these reasons we have said, "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many constitutional rights fall into this category. When we say 'that even constitutional guarantees can be waived by failure to object properly at trial,' we mean that some, not all, constitutional rights may be forfeited."[9]

---

**6.** *Moon*, at 687 (Phillips, J., concurring).

**7.** Tex.R.App. P. 33.1(a).

**8.** *See Saldano v. State*, 70 S.W.3d 873, 887 (Tex.Cr.App.2002) (referring to the corresponding provision in Tex.R. Evid. 103(a)).

**9.** *Ibid.* (footnotes omitted).

■ The rules that require a timely and specific objection, motion, or complaint do not apply to two relatively small categories of errors: violations of "rights which are waivable only" and denials of "absolute systemic requirements." Such errors may be raised for the first time on appeal.[10]

■ Examples of rights that are waivable-only include the rights to the assistance of counsel, the right to trial by jury, and a right of appointed counsel to have ten days of trial preparation which a statute specifically made waivable-only.[11]

■ Absolute, systemic requirements include jurisdiction of the person, jurisdiction of the subject matter, and a penal statute's being in compliance with the Separation of Powers Section of the state constitution.[12]

We set out this analysis in 1993 in *Marin v. State*.[13]

*Marin* has been a watershed decision in the law of error-preservation. After *Marin* we have held that a right [under the Double Jeopardy Clause to be free of multiple punishments] that formerly was thought to be "waivable only" actually requires an objection at trial. We have held that some requirements [statutory requirements of verdict by twelve jurors, and of concurrent sentencing for offenses tried in a single criminal action] that were formerly held to be absolute requirements are not. We have held that a party may be estopped from relying on an absolute requirement. On the other hand, we have recognized three more absolute requirements since *Marin:* a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitution-

al prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge.[14]

■ The question in each case is whether the event in the trial court was one to which the appellant was required to have made a timely, specific objection at trial. An appellant is required to object unless the right to avoid this type of event is a right that is either waivable-only or an absolute, systemic requirement.[15] In this case the event was the trial judge's expression of the misapprehension that a different judge had found the appellant guilty when she pleaded guilty.

The resolution of a lawsuit is not often accomplished in a single appearance in court. The usual procedure is that each case comes before the court in a series of hearings, among which are interposed a series of hearings in a multitude of other cases. It is no wonder, then, that judicial lapses of memory about past procedures are everyday occurrences in trial courts. Notations on docket sheets are the primary source of the case's history. The parties are often in a position to remind the court of the procedural posture of the case. Such reminders, like most objections, serve to call the court's attention to error as it occurs, while it can be corrected. Avoidance of mistakes is neither an absolute, systemic requirement, nor a right that requires an affirmative waiver. We think that a court's mistaken assumption that what usually happens in a case had happened in this case, is not an event that may be complained of for the first time on appeal.

---

10. *Ibid.* (citing *Marin v. State,* 851 S.W.2d 275, 280 (Tex.Cr.App.1993)).

11. *Ibid.*

12. *Ibid.*

13. *See supra,* note 10.

14. *Saldano,* 70 S.W.3d at 888–89.

15. *See id.,* at 888.

Here the appellant not only remained silent about the pendency of a decision on guilt, she repeatedly denied any claim of being anything short of guilty. She sought neither acquittal nor withdrawal of her plea nor conviction of a lesser offense; her only thought was to be given another probation. This, in light of the appellant's criminal history, the sentencing judge was disinclined to do. No one contends that this decision was unreasonable, or that the outcome of the trial would have been different if the judge had been reminded that the court had not yet made a finding of guilt.

Because the record fails to show the presentation of her complaint to the trial court and the trial court's ruling on it, which are prerequisites to appellate review, we hold that the appellant may not present the claim for the first time on appeal.

## II.

This failure to present a complaint to the trial court brings us to the second issue in the appellant's petition: whether she was denied the effective assistance of counsel when her attorney did not request a *Moon* review.

To resolve that issue we would have to decide whether counsel's performance fell below an objective standard of reasonableness, and, if it did, whether there is a reasonable probability that, but for that unprofessional performance, the result of the trial would have been different. As we have said repeatedly, appellate courts can rarely decide the issue of unreasonable performance because the appellate record rarely speaks to the strategic reasons that counsel may have considered. For example, we recently decided that an appellate record did not show that counsel rendered ineffective assistance by failing

to ask for withdrawal of a guilty plea when the defendant's testimony was inconsistent with guilt, or by failing to take other actions, since each of these decisions could have been a reasonable strategy.[16] The proper procedure for raising such a claim is almost always habeas corpus. In such a proceeding the appellant could undertake to prove both that (1) her counsel's silence fell below the standard of reasonable professionalism, and (2) that the result of the trial would have been different if counsel had taken some action such as informing the court that the issues of guilt were still undecided, or requesting that the appellant be permitted to withdraw her pleas, or arguing that the appellant should have been found not guilty or guilty of lesser offenses, or asking that the adjudication of guilt be deferred while the appellant was placed on probation.

The court of appeals correctly affirmed the judgments of the trial court, and we affirm its judgment.

JOHNSON, J., concurred in the judgment of the Court.

HOLCOMB, J., filed a dissenting opinion, in which PRICE, J., joined.

HOLCOMB, J., filed a dissenting opinion, in which PRICE, J., joined.

I respectfully dissent. In each of these two felony cases, the trial court accepted appellant's guilty plea and, *without ever adjudicating her guilty or considering evidence that she was in fact not guilty,* sentenced her to a term of imprisonment. The Fifth Court of Appeals affirmed. *Aldrich v. State,* 53 S.W.3d 460 (Tex.App.-Dallas 2001). Because I believe the trial court's unobjected-to errors here were fundamental and of the type that could generate public disrespect or suspicion regarding the fairness and accuracy of judicial proceedings, I would, in both cases, re-

**16.** *Mallett v. State,* 65 S.W.3d 59 (Tex.Cr.App. 2001).

verse the judgments of the courts below. I would also hold that trial counsel rendered ineffective assistance in failing to object to the trial court's errors. I would not relegate appellant to the difficult and cumbersome remedy of habeas corpus.

## I

On November 5, 1999, a Dallas County grand jury indicted appellant on two counts of impersonating a public servant.[1] In our case number 2066–01, the indictment alleged that on or about October 30, 1999, appellant "intentionally and knowingly impersonate[d] a public servant, namely: a City of Mesquite police officer, by demanding Cole Gillean to turn around and be arrested with intent to induce Cole Gillean to submit to [appellant's] pretended official authority." In our case number 2067–01, the indictment alleged that on or about October 30, 1999, appellant "intentionally and knowingly impersonate[d] a public servant, namely: a City of Mesquite police officer, by demanding Arlene Galvan open the door so that [appellant] could arrest said occupants with intent to induce Arlene Galvan to submit to [appellant's] pretended official authority." Each indictment contained a second paragraph alleging a previous felony conviction for punishment enhancement purposes. See Tex. Pen.Code § 12.42(a)(3).

On December 15, 1999, appellant appeared before Judge Keith Dean of the 265th District Court and entered, in each case, a non-negotiated guilty plea as well as a plea of "true" to the enhancement paragraph. Before accepting appellant's pleas, Judge Dean inquired as to her guilt as follows:

Judge Dean: What the police and the prosecutor claim happened is that you went over to a motel in Mesquite and claimed to be a police officer so the clerk would let you in to one of the rooms, and that's true, is that correct?

Appellant: Yes, sir. I had already been in the room.

Judge Dean: Right. But you wanted to get back in the room, and you thought if you claimed to be a police officer, they'd let you back in the room without asking a bunch of questions.

Appellant: Yes, sir.

Judge Dean also admitted in evidence State's Exhibits Numbers One and Two—appellant's signed judicial confessions[2]—in which she formally acknowledged her guilt. At the conclusion of the hearing, Judge Dean found the evidence sufficient to substantiate appellant's guilt, *but he deferred an actual adjudication of guilt* until a second hearing scheduled for the following month.[3]

At the second hearing, held January 6, 2000, before Visiting Judge Jack Hampton, appellant offered evidence in mitigation of punishment. Appellant testified and was asked a series of leading questions by trial counsel, apparently in an attempt to lay the groundwork for probation. Trial counsel then asked appellant whether she wished to say anything else to the judge.

---

**1.** Texas Penal Code § 37.11(a) provides, in relevant part, that a person commits a felony offense "if he impersonates a public servant with intent to induce another to submit to his pretended official authority."

**2.** Each confession consisted of a pre-printed form with a check mark in a blank beside the phrase, "I am guilty of the offense of," with the phrase, "impersonating an officer," handwritten below. The Clerk's Record contains two additional confessions, but they merely track the language in the indictments.

**3.** In its opinion, the court of appeals states that Judge Dean "entered findings of guilt in each case." *Aldrich v. State,* 53 S.W.3d at 467. However, Judge Dean's docket sheet plainly states that the cases were "continued to 1–6–00 for adjudication of guilt and assessment of punishment."

In response, appellant, for the first time, related her version of the events that occurred on the day of the alleged offenses:

Appellant: Well, to everything that happened that day that I said I was a peace officer, I am guilty of saying that. I did say that I was a peace officer, but I did not have a badge, no gun, no uniform, *nor did I tell them at any time to turn around and place their hands behind their back. From reading the indictment, that's what it said. I did not say that.*

*I went to the manager's office and told her to call the police, because they wanted to do something else which I didn't want to do.* So when she called the police, I had left from the motel, and they arrested me at a different place that I was visiting some friends at.

So when the police officer arrested me, I asked what I was being arrested for, and they said impersonating a peace officer. And I tried to explain to them the day they arrested me that *I didn't do it just to be getting anything out of it. I did it to save myself, because the guys were trying to rape me.*

So, that's about all I have to say. *And I guess the manager had misunderstood me because I talk fast when I get scared.* I talk fast, anyway. So when I get scared, I even talk faster. *So when I was trying to explain it to her, I took her out in the parking lot of the motel and pointed out the room where the guys were standing the day everything happened.*

At that point, Judge Hampton interjected: "You've already pled guilty. I can't find you not guilty." Appellant responded, "No, I'm guilty of saying it." Judge Hampton then stated, "I'm just trying to decide what I should do to you." Trial counsel failed to object to Judge Hampton's refusal to consider appellant's evidence of innocence.

Appellant's employer, Harold Helm, then testified on her behalf. Toward the end of his testimony, the following transpired:

The Court: You understand what she pled guilty to was impersonating a police officer?

Helm: Yes. *When I asked her why she did that—*

The Court: Yeah.

Helm:—*she told me about what she tried to explain to you. I think she had some communication skill problems in communicating. But she told me that some guys were trying to do something she didn't want done.*

I asked her, "Why did you do this? My gosh." And she explained that to me. And I said, well, *it sounded like something she did out of necessity,* you know, on the thing.

But she went ahead and pled the way she did, so she understands how the law works, and she didn't have a trial, but she did tell me that or related that. And I said, "You shouldn't get yourself in those situations no more." She thought she was doing the right thing at that time.

The Court: Did she tell you why she was at that motel?

Helm: They were supposed to have a party there. She was invited to a party. She found out she was the only party. She asked where the other girls were. They weren't there, so she just wanted to go. *They wouldn't let her go. That's when she said that.*

*Then she went down and asked the manager to call the police, and she took her outside and pointed out the room. That's what she explained to me.* And I said, "Oh, my gosh almighty, what a mess you got into."

But she was doing real well up to that time. She had completed her probation,

done everything she was supposed to do, and everything's been fine.

The Court: Thank you for coming down. Any further testimony?

Defense Counsel: Nothing further, Your Honor.

The State: Nothing from the State.

The Court: I'll be glad to listen to any comments or recommendations you all have.

Defense Counsel: Judge, we're just asking that you consider the testimony that you've heard and that Ms. Aldrich, she does have her work, a job, and a family that's depending on her, and we ask that you consider placing her on probation.

The Court: State?

The State: We request that she not get probation. She's been in trouble in the past, and it sounds like the story is a little different now.

The Court: Well, Judge Dean, I guess, gave her five years deferred, and she didn't make it in '97. She got her probation revoked, and there were apparently two new cases that she was on. After she got out on parole, she committed these two offenses. I just don't think she is a very good candidate for probation. So I'm going to sentence her to five years. It's not a twenty year case. But I am going to sentence you to five years.[4]

Appellant: Sir, please.

The Court: Yeah.

Appellant: Please, I will not, I will not mess up. Back then I had a real bad drug habit. I don't have a drug problem now. My family is depending on me to get out and help them. I promise to fulfill anything that I need to, but I don't deserve to go back to [prison] because I just said those words.

The Court: Well, your credibility is just not very good, you know, when you go around telling people you're a police officer and you are not.

Appellant: *Sir, I didn't know what else to say, sir, at the time.* Please. I don't have a drug problem. I have a job. I did do something with my life when I got out of prison. I didn't go back and mess up on the streets like I was in '97.

The Court: I certainly hope that you do well when you get out this time.

Later that day, Judge Hampton signed a pre-printed form judgment in each case that recited that appellant was "adjudged guilty of the offense."

On direct appeal, appellant, citing *Moon v. State,* 572 S.W.2d 681 (Tex.Crim.App. 1978), argued, for the first time, that Judge Hampton erred in accepting her guilty pleas and sentencing her to terms of imprisonment without actually adjudicating her guilty in either case and without considering evidence—her testimony and Helm's testimony—that "raised a reasonable doubt about her guilt." In particular, appellant argued that Judge Hampton's comment, "You've already pled guilty. I can't find you not guilty," showed that he erroneously believed that Judge Dean had already adjudicated her guilty in each case. She argued further that if Judge Hampton had actually considered her evidence, he might have found her not guilty because the evidence showed that "she impersonated a police officer [out of necessity] to extricate herself . . . from a sexual assault situation."[5] Finally, appellant ar-

---

**4.** Thus, Judge Hampton sentenced appellant to imprisonment for five years in each case without first adjudicating her guilty. Apparently, he believed, incorrectly, that Judge Dean had already adjudicated appellant guilty. Trial counsel failed to object to Judge Hampton's error.

**5.** Texas Penal Code § 9.22 provides that it is a defense to prosecution for otherwise criminal conduct if:

gued that trial counsel rendered ineffective assistance in failing to object to Judge Hampton's errors.

The Fifth Court of Appeals, with one justice dissenting, rejected appellant's argument and affirmed the judgments of the trial court. *Aldrich v. State*, 53 S.W.3d 460. The court of appeals acknowledged that "the rule applicable in [these] case[s] is expressed in *Moon v. State*," *id.* at 467, but the court held that (1) appellant's evidence did not raise an issue as to her guilt in either case and (2) appellant "waived error, if any," because she "did not request permission to change or withdraw her plea of guilty, move the court to find her not guilty, suggest she should be convicted of a lesser included offense, or lodge any objection whatever to the proceedings." *Id.* at 468–469. *See* Tex.R.App. Proc. 33.1(a). The Fifth Court also rejected appellant's ineffective assistance claim. *Id.* at 471. Justice Richter, in dissent, argued:

> "The evidence reasonably and fairly raised issues as to appellant's guilt and [Judge Hampton] should have determined whether appellant was guilty before sentencing her. He erred in failing to do so."

> \* \* \*

> "[Judge Hampton's] choice of words and the sequence of events that transpired can be logically explained only by concluding [he] erroneously believed appellant already had been adjudicated guilty

and he had no power to decide otherwise."

*Id.* at 473 and 478.

We subsequently granted appellant's petitions for discretionary review to determine whether the court of appeals erred. See Tex.R.App. Proc. 66.3(e).

In her briefs to this Court, appellant reiterates the argument she made in the court of appeals. In response, the State argues that (1) appellant waived any error when she "failed to raise [the] issue [of her innocence] in the trial court"; (2) Judge Hampton's statement, "Well, your credibility is just not very good," showed that he did not believe appellant's evidence; and (3) appellant's evidence was, in any event, "implausible" and did "not raise the issue of innocence or the defense of necessity."

## II

Our law plainly requires that a defendant may be sentenced to a term of imprisonment only *after* being found guilty of a crime. See, *e.g.*, Tex.Code Crim. Proc. arts. 37.07, § 2(c) & 42.01, § 1(8).[6] Certainly, due process of law requires no less. However, as appellant argues, and as Justice Richter argued below, the record clearly reflects that neither Judge Dean nor Judge Hampton ever adjudicated appellant guilty. Judge Dean heard evidence at the first hearing and concluded that it substantiated appellant's guilt, but he deferred an actual adjudication of her guilt until a second hearing could be held. At

---

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

**6.** Article 37.07, § 2(c), relating to jury trials, states that "[p]unishment shall be assessed on each count on which a finding of guilt has been returned." Article 42.01, § 1(8), states that a judgment should reflect that "[i]n the event of a conviction that the defendant is adjudged guilty of the offense as found by the verdict of the jury or the finding of the court, and that the defendant be punished in accordance with the jury's verdict or the court's finding as to the proper punishment."

that second hearing, Judge Hampton heard evidence that arguably raised a reasonable doubt as to appellant's guilt under both indictments, but he refused to consider that evidence and the possibility of finding appellant not guilty, though he had the authority to do so. Apparently, Judge Hampton believed, incorrectly, that Judge Dean had already adjudicated appellant guilty. Although Judge Hampton signed a pre-printed judgment in each case purporting to adjudicate appellant's guilt, it is apparent that he did so only because he believed that Judge Dean had already adjudicated her guilty.

In my view, appellant's failure to object in the trial court did not forfeit her right to complain, on appeal, about the trial court's sentencing her without first adjudicating her guilty. Usually, of course, a defendant procedurally defaults a claim of error when he fails to raise it in the trial court. *Saldano v. State*, 70 S.W.3d 873, 886–887 (Tex.Crim.App.2002). However, certain fundamental errors may be raised for the first time on appeal. *Marin v. State*, 851 S.W.2d 275, 279–280 (Tex.Crim. App.1993). Because the trial court's error in sentencing appellant without first finding her guilty is the type of error that could generate public disrespect or suspicion regarding the fairness and accuracy of judicial proceedings, I would hold it fundamental and raisable for the first time on appeal. See G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 42.252 at 377 (2d ed.2001) (discussing nature of fundamental error).

### III

I turn next to Judge Hampton's failure to consider appellant's evidence of innocence. We have held that if a defendant waives a jury and pleads guilty before the trial court, and evidence is presented, and not later withdrawn, that makes evident the innocence of the defendant or that reasonably and fairly raises an issue as to

the defendant's guilt, then "[i]t is the duty of the trial court to consider the evidence submitted," and the trial court, as the trier of fact, may find the defendant guilty, not guilty, or guilty of a lesser included offense, as the evidence may warrant. *Moon v. State*, 572 S.W.2d at 682. The purpose of the *Moon* rule is to prevent unjust convictions and the burdens they place on both innocent defendants and society. The rule exists because of our recognition that unwitting or coerced, and yet innocent, defendants require the protective intervention of the trial court. See G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* §§ 34.81–34.83 (2d ed. & Supp.2002) (discussing *Moon* and related cases); W. LaFave, *et al., Criminal Procedure* § 21.4(f) at 181 (reported cases show that occasionally defendants plead guilty without realizing their conduct does not actually fall within the charged offenses). As the dissent below acknowledged, "A trial judge is possessed of no greater trust than ensuring that the innocent are not imprisoned." *Aldrich v. State*, 53 S.W.3d at 479 (Richter, J., dissenting).

The record reflects that appellant waived a jury and entered a non-negotiated guilty plea before Judge Dean to two counts of impersonating a public servant. Later, before Judge Hampton, appellant presented evidence, and did not later withdraw that evidence, to the effect that, on the day in question, she impersonated a police office in order to prevent being raped and that she did not impersonate a police officer when she spoke with the motel clerk. Without doubt, this evidence reasonably and fairly raised an issue as to appellant's guilt in both cases. As the record reflects, however, Judge Hampton failed to consider this evidence though he had the authority and duty to do so, apparently believing, incorrectly, that Judge Dean had already adjudicated appellant

guilty.[7] Judge Hampton's failure to consider appellant's evidence was in contravention of the rule of *Moon* and was error.

In my view, appellant's failure to object in the trial court did forfeit her right to complain, on appeal, about the trial court's failure to follow *Moon.* The rule of *Moon* exists, as I noted previously, because of our recognition that unwitting or coerced, and yet innocent, defendants require the protective intervention of the trial court. Given that fact, it would be perverse to hold that those same defendants lose the benefit of the rule if they fail to invoke it in the trial court.

I also reject the notion that Judge Hampton's statement, "Well, your credibility is just not very good," can be interpreted to mean that he disbelieved appellant's evidence. In context, it is apparent that Judge Hampton's statement was intended to mean he disbelieved appellant's claim that, if given probation, she would "not mess up."

### IV

Finally, I turn to trial counsel's failure to object to either of Judge Hampton's errors. In my view, trial counsel clearly rendered ineffective assistance.

The Sixth Amendment guarantees the right to the reasonably effective assistance of counsel in state criminal prosecutions. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In general, to obtain a reversal of a conviction on the ground of ineffective assistance, an appellant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a reasonable strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constituted deficient performance "unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim. App.2001).

In my view, trial counsel in this case could have had no reasonable strategic motivation for failing to object to Judge Hampton's errors. I also believe that there is at least a *reasonable* probability that had trial counsel objected, Judge Hampton would have considered appellant's evidence of innocence and found her not guilty.

I would reverse the judgments of the court of appeals and remand the cases to the trial court for further proceedings consistent with this opinion.

---

**7.** Judge Hampton's comment, "You've already pled guilty. I can't find you not guilty," cannot reasonably be read "to mean anything other than he mistakenly believed he lacked

the power to find appellant not guilty." *Aldrich v. State,* 53 S.W.3d at 478 (Richter, J., dissenting).