Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

 )
 No. 08-02-00517-CR

)


EX PARTE: SHEADRICK HANNAH
)
 Appeal from

)
 

)
 243rd District Court

)


)
 of El Paso County, Texas

)


)
 (TC# 20000D02733)


MEMORANDUM OPINION



 Sheadrick Hannah appeals from the denial of his application for writ of habeas corpus. We
affirm.

FACTUAL SUMMARY


 Detective Silvio Karisch interviewed Appellant during his investigation of a burglary of the
Dairy Queen where Appellant worked. Karisch suspected that one or more of the employees had
committed the burglary. When Karisch discovered that Appellant had an outstanding warrant, he
arrested him and interviewed him at the police station about the burglary. Appellant gave a written
statement admitting that he had acted as a lookout for the persons who committed the Dairy Queen
burglary. One of the co-actors gave Appellant approximately $3,000 taken in the burglary and asked
him to hide the money until the co-actor could return for it. Appellant was to receive a portion of
the money in exchange for hiding it until the co-actor retrieved it. Appellant also told Detective
Karisch that he had hidden cocaine beneath a "mattress" outside of his apartment. Appellant signed
a written consent to search his apartment. Officers who searched Appellant's apartment found
$2,629 inside of the apartment and 2.5 grams of cocaine beneath a cushion on a couch located on
Appellant's patio. Both items of evidence were found exactly where Appellant stated they would
be located. A grand jury indicted Appellant for possession of cocaine and burglary of a building. (1) 
 On June 4, 2001, Appellant waived his right to a jury trial and entered a negotiated guilty
plea to both offenses. The trial court admonished Appellant as required by Article 26.13 of the Code
of Criminal Procedure and Appellant voluntarily signed the waiver of his constitutional rights and
made a judicial confession. Appellant informed the trial court that he was pleading guilty because
he was guilty and for no other reason. In accordance with the plea bargain, the trial court found
Appellant guilty of possession of cocaine and assessed punishment at a fine of $1,000 and
imprisonment for ten years, probated for five years. The court also found that the evidence
substantiated Appellant's guilt of burglary of a building, but in accordance with the plea bargain
agreement, the court deferred adjudicating Appellant's guilt and placed him on deferred adjudication
community supervision for five years. Following sentencing, the trial judge admonished Appellant
that he would have to change his attitude in order to successfully complete probation. The following
exchange then occurred:

 [Appellant]: I, in my heart, know that I ain't guilty, and I'm sitting here taking this,
and there ain't nothing that I can tell Your Honor to make it no different.


 [The Court]: You can have your trial. I don't have any problems giving you --


 [Appellant]: No, I'm satisfied with the way it is. I'm just telling you, I have to say
that. I didn't do it.

 Appellant's counsel interrupted and explained that Appellant wanted to transfer his
community supervision to his home state, Georgia. After the trial court approved the transfer of
Appellant's community supervision to Georgia, Appellant objected to the court's order that the
money seized from Appellant's apartment as evidence be returned to the owner of the Dairy Queen. 
Appellant claimed that the money was not taken in the burglary but was his wife's income tax
refund. The trial court offered to set the dispute for a restitution hearing in order to provide
Appellant with the opportunity to prove that the money belonged to his wife. Appellant responded
that they could just keep the money because he did not care.

 Approximately seventeen months after the guilty plea, Appellant filed an application for a
writ of habeas corpus in the trial court. He requested that the trial court set aside his guilty plea on
the ground that it was involuntary. Following an evidentiary hearing, the trial court denied the
requested relief. Appellant filed a timely notice of appeal.

WITHDRAWAL OF GUILTY PLEA


 In his sole issue on appeal, Appellant argues that the trial court should not have accepted his
guilty plea but should have sua sponte entered a plea of not guilty when Appellant protested his
innocence. In support of his argument, Appellant cites Odom v. State, 852 S.W.2d 685 (Tex.App.--
Houston [14th Dist.] 1993, pet. ref'd) and Griffin v. State, 703 S.W.2d 193, 195 (Tex.Crim.App.
1986). 

 Appellant is correct that Griffin and Odom hold that when evidence is introduced which
reasonably and fairly raises an issue as to the innocence of the accused, and is not withdrawn, the
defendant's guilty plea must be withdrawn and a plea of not guilty must be sua sponte entered by
the court. See Griffin, 703 S.W.2d at 195; Odom, 852 S.W.2d at 686. However, this rule applies
only where the defendant enters a guilty plea before a jury. A different rule applies where the
defendant waives his right to a jury trial and enters a guilty plea before the court.

 In Moon v. State, 572 S.W.2d 681, 682 (Tex.Crim.App. 1978)(op. on reh'g), the Court of
Criminal Appeals held that when the defendant waives his right to a jury trial and enters a guilty
plea, the trial judge is not required to withdraw the defendant's guilty plea if evidence inconsistent
with guilt is introduced. Prior to the decision in Moon, the trial court would have been required to
withdraw the defendant's guilty plea and enter a plea of not guilty if evidence inconsistent with guilt
was introduced. Prior to January 1, 1966, the Code of Criminal Procedure did not permit a
defendant to waive a jury and enter a plea of not guilty before the trial court. Moon, 572 S.W.2d at
682. Thus, a trial court's authority in felony cases was restricted to resolving legal questions and
only a jury could decide factual issues. Consequently, if the defendant waived a jury trial and
entered a plea of guilty before the court and the court was presented with evidence inconsistent with
guilt thereby raising a fact issue, the court was not authorized to find the defendant guilty of a lesser
included offense or not guilty because it did not have fact-finding authority. In those circumstances,
the trial court was required to withdraw the defendant's guilty plea, enter a plea of not guilty, and
impanel a jury to hear the not guilty plea. Aldrich v. State, 104 S.W.3d 890, 893 (Tex.Crim.App.
2003); Moon, 572 S.W.2d at 682. The1965 amendments to the Code of Criminal Procedure made
a significant change by providing that the defendant could waive a jury trial and enter a plea of not
guilty before the court in all cases except capital cases. Moon, 572 S.W.2d at 682, citing Articles
1.13 and 1.14 of the Code of Criminal Procedure. These statutory changes authorized the trial court
to resolve factual questions in felony cases. As the trier of fact, the trial court may now find that the
evidence did not create a reasonable doubt as to guilt, find the defendant guilty of a lesser offense
and assess the appropriate punishment, or find the defendant not guilty just as a jury would have
done under the pre-1966 procedure. See Aldrich, 104 S.W.3d at 893; Moon, 572 S.W.2d at 682. 
It would serve no purpose to withdraw the guilty plea and enter a not guilty plea. Id. Moon
continues to be valid law. See Aldrich, 104 S.W.3d at 892-94. But see Martin v. State, 08-02-00144-CR, 2004 WL 67248 (Tex.App.--El Paso January 15, 2004)(not designated for publication).

 Applying Moon to the instant case, we conclude that the trial court was not obligated to
withdraw Appellant's guilty plea. Further, Appellant should not be heard to complain where he
expressly rejected the trial court's offer to have a trial in his cases. Accordingly, the trial court
properly denied the relief requested in his application for writ of habeas corpus. Appellant's sole
point of error is overruled and the order of the trial court denying habeas corpus relief is affirmed.



May 27, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.

(Larsen, J., concurring)


(Do Not Publish)



CONCURRING OPINION

 Although I agree with the majority that the trial court correctly refused Hannah's application
for writ of habeas corpus, I nevertheless write to explain my thinking here, and reconcile it with the
majority opinion in Martin v. State (January 15, 2004). In Martin, unlike this case, we found the
trial court abused its discretion in failing to sua sponte withdraw the plea of guilty.

 I begin and end with the most important principle of our criminal jurisprudence: that we
seek to convict only the guilty and not the innocent. In re Winship, 397 U.S. 358, 364 (1970). In
light of many recent examples of our legal system's failure to live up to this ideal, (2) I think it should
be our first priority (and that of the trial court, as well) to insure that those who plead guilty to an
offense are indeed, beyond a reasonable doubt, guilty.

 It was long the rule that where evidence reasonably and fairly raised an issue as to the
accused's innocence and such evidence was not withdrawn, the trial court was required to withdraw
a plea and sua sponte enter one of not guilty. Griffin v. State, 703 S.W.2d 193, 195 (Tex.Crim.App.
1986). This was true even when a jury had been waived and a plea entered before to court. Burks
v. State, 165 S.W.2d 460 (Tex.Crim.App. 1942); Gonzales v. State, 480 S.W.2d 663 (Tex.Crim.App.
1972); Faz v. State, 510 S.W.2d 922 (Tex.Crim.App. 1974); Sanchez v. State, 543 S.W.2d 132
(Tex.Crim.App. 1976). As the Griffin court observed:

 This rule is a vital safeguard which operates to protect the accused from any outside
pressure which could result in an innocent party being convicted, upon his own plea
of guilty, of a crime he did not commit. Since a person cannot at any time
involuntarily plead guilty to a crime for which he is accused, the totality of the
circumstances of each case is assessed to assure the voluntary nature of the plea. 
However, the rule is clear in our case law that when the exculpatory evidence is
produced by the defendant himself, that it may be withdrawn by him and a plea of
guilty may still be taken upon his own volition. Griffin, 703 S.W.2d at 195 (internal
citations omitted).


 As knowledgeably discussed by the majority, however, these rules were changed with Moon. 
I do not believe, however, that Moon provided carte blanche for a trial court to simply ignore
evidence of innocence where a defendant has, for whatever reason, elected to plead guilty. See
Moon, 572 S.W.2d 681, 682 ("It is the duty of the trial court to consider the evidence submitted and
as the trier of the facts the court may find the appellant guilty of a lesser offense . . . or it may find
the defendant not guilty.").

 In the Martin majority opinion, perhaps we should have placed more emphasis on the
standard of review to be applied in reviewing the failure to withdraw a guilty plea. That standard
is clearly abuse of discretion. See Aldrich v. State, 104 S.W.2d 890, 894 (Tex.Crim.App. 2003)
citing Moon, 572 S.W.2d at 687 (Phillips, J. concurring). Martin does not hold that the trial court
must always withdraw a guilty plea where some question of innocence is adduced; rather, it holds
that it must do so when the record evidence reasonably and fairly raises the issue. In other words,
the trial court may withdraw or sustain a guilty plea in the face of some evidence of innocence in
the exercise of its sound discretion. Martin, slip opinion at 3. Abuse of discretion occurs when the
trial court's ruling lies outside the zone of reasonable disagreement. Id.

 Thus, our holding in Martin was that in the face of much evidence that would establish
innocent conduct the trial court abused its discretion in failing to withdraw Martin's plea. The
exculpatory evidence there came not just from Martin herself, but also from her husband, mother,
friend, and the total circumstances surrounding the death of Martin's daughter. Martin at slip
opinion 2-3. In contrast, the evidence of innocence in this case consists solely of Hannah's bare
statement during his plea that "I, in my heart, know that I ain't guilty," and his claim that the money
confiscated in his apartment was not the fruits of burglary, but his wife's IRS refund. As Hannah
produced this evidence himself, he was free to withdraw it and continue with his plea. Griffin, 702
S.W.2d at 195. Importantly, the trial court offered Hannah a trial before accepting his plea, to which
he replied, "No, I'm satisfied with the way it is." Similarly, the trial court offered Hannah a
restitution hearing on the money issue, which he likewise refused. I can see no abuse of discretion
in the trial court's rejection of Hannah's self-serving and unsubstantiated statements after his
rejection of the offered trial and hearing. This case is easily distinguishable from Martin.

 "The purpose of the Moon rule is to prevent unjust convictions and the burdens they place
on both innocent defendants and society. The rule exists because of our recognition that unwitting
or coerced, and yet innocent, defendants require the protective intervention of the trial court." 
Aldrich, 104 S.W.3d at 901 (Holcomb J., dissenting). Here, the trial court observed that guidepost
of our system. Nevertheless, I believe we do well to remember that our system is imperfect and the
trial judge has "no greater trust than ensuring that the innocent are not imprisoned." Id. For these
reasons, I concur.



May 27, 2004 

 SUSAN LARSEN, Justice

1. The instant case concerns only the possession of cocaine conviction.
2. See Stephen B. Bright, Elected Judges and the Death Penalty in Texas: Why Full Habeas Corpus Review
by Independent Federal Judges is Indispensable to Protecting Constitutional Rights, 78 Tex. L. Rev. 1805, 1807, 1813
(2000) (citing seven Texas cases in which defendants were released from death row after establishing their innocence,
including the notorious cases of Randall Dale Adams and Clarence Brandley and the El Paso case of Federico Martinez
Macias); Richard A. Rosen, Innocence and Death, 82 N.C.L. Rev. 61, 73 n.38 (2003) ("The two leading forensic
laboratories that perform post-conviction DNA analysis . . . concur in estimating that their work has exonerated about
forty percent of defendants for whom they received samples for post-conviction examination."); Politics: An Innocent
Texas Inmate is Freed, Salon, Jan. 17, 2001, at http://archive.salon.com/politics/feature/2001/01/17/ochoa/ (describing
the case of Christopher Ochoa, who was freed from a Texas prison after DNA evidence proved he did not commit a rape
and murder to which he had confessed); Report of the Governor's Commission on Capital Punishment 1 (April 15,
2002), http://www.idoc.state.il.us/ccp/ccp/reports/commission_report/complete_report.pdf (noting that the Governor of
Illinois imposed a moratorium on capital punishment after journalism students proved that a death row inmate was
innocent); Innocence Project, http://www.innocenceproject.org/case/display_cases.php?sort=year_exoneration (providing
list of 144 defendants who have been exonerated); Richard C. Dieter, Innocence and the Death Penalty: The Increasing
Danger of Executing the Innocent, Death Penalty Information Center (July 1997),
http://www.deathpenaltyinfo.org/article.php?scid=45&did=292 ("The danger that innocent people will be executed
because of errors in the criminal justice system is getting worse. A total of 69 people have been released from death row
since 1973 after evidence of their innocence emerged.").