IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







PD-0498-04






RUTH ANN MARTIN, Appellant



v.



THE STATE OF TEXAS






ON DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


DALLAS COUNTY






 Per Curiam. Holcomb, J., concurred in the judgment.



 The issue in this case is whether the trial court, sua sponte, should have withdrawn the
appellant's plea of guilty in a trial without a jury.

Trial Court


 Having been indicted for the second-degree felony of recklessly causing serious bodily
injury to a child, the appellant waived trial by jury and pleaded guilty. The State introduced her
written, judicial confession. The appellant testified, and she presented testimony from friends and
family.

 The appellant said that she was on felony probations for four controlled-substance
offenses; three were deliveries, and one was possession. She also had been convicted twice for
obscenity offenses. According to her testimony, she had been doing well for nine years, until
early in 2001, when she "relapsed" and took some morphine.

 She testified that her mother-in-law, who had suffered from cancer, had been prescribed
some morphine pills. After the mother-in-law died, a sister-in-law sent the pills to the appellant's
house so that her husband could try to sell them. There were "a lot" of them, maybe fifty. The
appellant, her husband, and a friend each took one of them. They made the appellant and her
friend sick.

 The appellant's husband couldn't sell the rest of the pills, and the appellant was supposed
to give them back to the sister-in-law. Instead, she put them in the medicine cabinet. They were
in a bottle that the appellant said "looks like a regular aspirin bottle, I guess." Whether there was
a child-proof top, she "d[id]n't know. I think it was child-proof. Just the push and turn." She
didn't think the kids would get into it.

 One night, the appellant and her husband went out to a bar. Their five-year-old child was
left at a friend's house. The other two children stayed at home. The appellant testified that the
oldest child, who "was twelve  fixing to be thirteen,  was in charge" of his younger sister,
Heather. Heather's age does not appear in the record. The appellant knew that Heather had a
headache. All the family suffers from migraines, "every now and then." While the appellant and
her husband were at the bar, the children called them. Heather asked permission to lie in the
appellant's bed.

 When the appellant came home after four hours, Heather was asleep in the appellant's
bed. When the appellant woke Heather up, to take her to her own bed, Heather said, "I can't walk
right," and she collided with a door jamb. The appellant thought Heather was okay, and she put
her in bed.

 The appellant told investigators that she heard Heather vomiting during the night. At trial,
she testified that she was mistaken about that, and that she just assumed that Heather had been
vomiting because, the next morning, she saw vomit coming from Heather's mouth. Heather was
already dead by then. The appellant agreed that "they" (persons not otherwise described, but
evidently medical personnel) "found five pills -- undigested pills -- in [Heather's] stomach."

 After the appellant heard that detectives were coming to the house, her husband "flushed"
the pills.

 There was no agreement between the State and the appellant about punishment.

 The court found the appellant guilty and assessed punishment of twenty years' imprisonment. The appellant gave notice of appeal.

Court of Appeals


 The appellant's first point of error, "The trial court abused its discretion in not rejecting
the appellant's plea of guilty," was sustained by a divided panel of the Eighth Court of Appeals. (1)
The court said, "In light of the record as a whole, we believe that the evidence reasonably and
fairly raised the issue whether appellant consciously disregarded a substantial and unjustifiable
risk." (2)

 The court recognized our holding in the leading case, Moon v. State, (3) that when a
defendant waives trial by a jury and enters a plea of guilty, the introduction of evidence that is
inconsistent with guilt does not require a court, sua sponte, to withdraw the plea of guilty and
enter a plea of not guilty. (4) The court distinguished Moon:

 Notably, in Moon there is no mention of a plea agreement and the cause
was tried to the court. See Moon, 572 S.W.2d at 682. The case sub judice is
inapposite because this is not a trial to the bench. Rather, we are presented with a
plea bargain agreement. (5)

 

 If we believed Moon were applicable, our inquiry would end. See Moon,
572 S.W.2d at 682 (negating the rule requiring sua sponte withdrawal of a guilty
plea after evidence of innocence in a non-jury trial). In Moon, however, there is no
mention of a plea agreement. Id. And, as we noted, the State argues that the trial
court was without jurisdiction to withdraw appellant's plea. 

  The State argues that after approving a plea bargain agreement, the
lower court cannot withdraw the guilty plea. (6)


 The court held, "We can only conclude that appellant's contract with the State to plead
guilty, when the record evidence reasonably and fairly raised issues of innocence, was void as
against public policy. See Griffin [v. State], 703 S.W.2d [193 (Tex. Cr. App. 1986),] at 195." (7)
This holding was based on principles of contract law, under which courts hold that contracts that
are against public policy are void, (8) and constitutional principles of due process of law (9) and due
course of the law of the land (10) which require a conviction to be entered only on a showing of
guilt beyond a reasonable doubt.

 The State's motion for rehearing was denied. We granted review.

Discussion


 We begin by clearing up some terminology. This case may not be distinguished from
Moon on the basis that there was no plea-bargain agreement in Moon, and there was a plea-bargain agreement in this case. There was no plea-bargain agreement in this case.

 The parties and the trial court did sign a printed form, styled "Plea Agreement." In one
part of it, the parties may enter an agreement as to punishment, but there was none in this case. It
was specified that this would be an "Open plea." The rest of the form's two, legal-size pages of
close printing comprised the court's admonitions to the defendant on the range of punishment,
recitations of the defendant's procedural rights, the parties' waivers of rights and consents to
stipulation of evidence, the defendant's statements of understanding of rights, the defendant's
plea of guilty, and the court's finding that these acts were voluntary and its approval of them.

 In its brief, the State referred to this document as "the open plea bargain," (11) and an "open
plea bargain agreement." (12) This is another odd choice of language. Some pleas of guilty are
"open pleas," in which there are no agreed recommendations of punishment from the State. In
other pleas of guilty, the State and the defendant have made "plea-bargain" agreements for
recommendations of punishment. But an "open plea bargain agreement" would mean an
agreement not to agree. The unusual language in the plea form and the State's brief may have led
the court of appeals to believe that there was a plea-bargain agreement in this case that made it
different from the Moon case. There was not, as the appellant acknowledges in her brief in this
court. (13)

 The more important point is that the holding of Moon is not affected by the presence or
absence of a plea bargain. This court's decision in Moon was based on the act of the legislature
that, in 1966, authorized the trial of a felony case without a jury on a plea of not guilty. (14) Before
that act, if it became apparent during a plea of guilty without a jury that the evidence required the
entry of a plea of not guilty, "the court was required to impanel a jury to hear the not guilty
plea." (15) In effect, the court had to declare a mistrial during the trial on the guilty plea. After the
act, the court could simply continue the trial and enter the judgment that the law and the facts
required -- "to consider the evidence submitted and as the trier of facts the court may find the
appellant guilty of a lesser offense  or it may find the defendant not guilty. It would serve no
purpose to withdraw the plea of guilty and enter a not guilty plea." (16)

 This procedural change of the 1966 law obtains in plea-bargained and non-plea-bargained
cases alike, when they are tried without a jury.

 Insofar as the court of appeals' opinion may be read to suggest that due process of law or
due course of the law of the land has been denied by a conviction in a trial on a plea of guilty in
which there was some evidence that was inconsistent with guilt, this would be incorrect. The
due-process requirement for a judgment of guilt is satisfied by the knowing and voluntary plea of
guilty alone. (17)

 Texas' requirement, for further evidence of guilt when a plea of guilty is made in a felony
trial without a jury, is one of statute. (18) An amendment to the statute that became effective in 1966
allowed the parties to stipulate the evidence. (19) A defendant's judicial confession also is sufficient
evidence. (20)

 In this case, the appellant does not contend that her plea of guilty and her judicial
confession were not knowing and voluntary. Her claim is that the law requires a court to change
her plea from guilty to not guilty when evidence inconsistent with guilt is introduced. It does not.

 The appellant could have argued to the trial court that she should be found not guilty on
the basis of her testimony, rather than guilty on the basis of her plea of guilty and her judicial
confession of guilt. She certainly could have withdrawn her plea of guilty. She did neither. In her
brief to the court of appeals is a point that raises the issue whether she was denied effective
assistance of counsel when her lawyer failed to take such actions. We express no opinion on this
issue. We are called on today only to hold that the trial court did not err in failing to change the
appellant's plea from guilty to not guilty.

Judgment


 The judgment of the Eighth Court of Appeals is reversed, and the case is remanded to that
court for consideration of the appellant's other points of error.


En banc.

Delivered March 2, 2005.

Do Not Publish.
1. Martin v. State, No. 08-02-00144-CR, 2004 Tex. App. LEXIS 434 (Tex. App. -- El Paso,
January 15, 2004) (not designated for publication).
2. Id., at 9.
3. 572 S.W.2d 681 (Tex. Cr. App. 1978).
4. Id., at 682.
5. Op., at 6.
6. Id., at 10-11.
7. Id., at 14.
8. Id., at 12-13.
9. Id., at 5.
10. Id., at 13-14.
11. State's Brief in Court of Appeals, at 1.
12. Id., at 4, 8, 10.
13. "[T]he present case  was  an 'open plea,' not a plea bargain." Brief, at 7.
14. Code of Criminal Procedure Act, 59th Leg., R.S., ch. 722, § 1, art. 1.15, 1965 Tex. Gen. Laws
vol.2, p. 317, 322.
15. Moon, 572 S.W.2d, at 682.
16. Ibid. Accord, Aldrich v. State, 104 S.W.3d 890, 893 (Tex. Cr. App. 2003).
17. See North Carolina v. Alford, 400 U.S. 25 (1970); Boykin v. Alabama, 395 U.S. 238 (1969); Ex
parte Williams, 703 S.W.2d 674, 682 (Tex. Cr. App. 1986).
18. See Tex. Code Crim. Proc. art. 1.15.
19. Code of Criminal Procedure Act, supra n.14, at 322. See generally Rodriguez v. State, 442
S.W.2d 376, 379 (Tex. Cr. App. 1969) (opinion of Onion, J.).
20. See Dinnery v. State, 592 S.W.2d 343 (Tex. Cr. App. 1980).