# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00329-CR

**Jeremy Jermaine James, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 10-1032-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Jeremy James was charged with aggravated sexual assault of a child and with indecency with a child by contact. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2012) (listing elements for crime of aggravated sexual assault), § 21.11 (West 2011) (defining crime of indecency with child). A trial was held, and the jury found James guilty of the crimes alleged. At the end of the guilt portion of the trial, the district court instructed the jury to not discuss the case with anyone and released the jury for the weekend. The jury reconvened the following Monday, and a punishment hearing was conducted. After James and the State made their closing arguments, the jury deliberated and sentenced James to imprisonment for twelve years for the assault charge and to imprisonment for three years for the indecency charge.

At the end of the hearing and after punishment was pronounced, one of the jurors, McCay Bradford, informed the district court that he did not hear the district court's instruction to

not discuss the case and that he had discussed the case with his wife and a friend over the weekend before the punishment hearing started. The district court, the State, and James then questioned Bradford about the nature of the conversations and whether they had an impact on his decision making. After Bradford was questioned, Bradford was released, and the hearing concluded without any further comment from the district court or the parties.

James appeals his judgment of conviction.

## DISCUSSION

In his sole issue on appeal, James contends that he is entitled to a new trial because Bradford improperly discussed the case with individuals who were not serving on the jury.

As a preliminary matter, we note that it appears from the record that James did not preserve this issue for appeal. After juror Bradford informed the district court that he had discussed the case with his wife and his friend, the State and James both questioned Bradford regarding the types of conversations that he engaged in. However, James never moved for a new trial or made any objection or other complaint to the district court regarding Bradford's actions or the propriety of the jury's judgment.

When describing the requirements for "presenting a complaint for appellate review," the rules of appellate procedure explain that "the record must show that" the party made the complaint to the trial court "by a timely request, objection, or motion" and that the trial court ruled on the complaint "expressly or implicitly" or that the trial court refused to rule on the complaint and that "the complaining party objected to the refusal." Tex. R. App. P. 33.1(a). The requirement that a party make specific complaints promotes "the prevention and correction of errors." *Aldrich v. State*,

2

104 S.W.3d 890, 894 (Tex. Crim. App. 2003). "When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite." *Id.* Given the primacy of the need to inform the court of the basis for a complaint, "[a]ll but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong," including many constitutional rights. *Id.* at 894.

As mentioned above, James made no complaint to the district court. Moreover, the error alleged on appeal does not fall within the two limited "categories of errors" that are exceptions to the need to present the error to the trial court: "violations of 'rights which are waivable only' and denials of 'absolute systemic requirements.'" *Id.* at 895 (quoting *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002)). Waivable-only rights include the right "to the assistance of counsel, the right to trial by jury, and [the] right of appointed counsel to have ten days of trial preparation which a statute specifically made waivable-only." *Id.* "Absolute, systemic requirements include jurisdiction of the person, jurisdiction of the subject matter, [] a penal statute's being in compliance with the Separation of Powers Section of the State constitution[,]" the requirement "that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge." *Id.*

Even assuming that this issue is subject to appellate review, we would be unable to sustain James's point on appeal. *See* Tex. R. App. P. 21.2 (stating that motion for new trial is prerequisite to presenting issue "on appeal only when necessary to adduce facts not in the record"). Although no motion for new trial was filed in this case, the district court's actions after hearing the

3

testimony from Bradford evidenced its belief that a new trial was not warranted and thus effectively served as a denial of a motion for new trial. We review the denial of a motion for new trial for an abuse of discretion. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). Under an abuse-of-discretion standard, we "do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable." *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Further, we must defer to reasonable implied facts that the trial court may have made when denying a motion for new trial. *Charles v. State*, 146 S.W.3d 204, 211 (Tex. Crim. App. 2004).

Under the rules of appellate procedure, an individual "must be granted a new trial, or a new trial on punishment . . . when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; . . . [or] when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." Tex. R. App. P. 21.3(f), (g). If a juror discusses the case "with an unauthorized person," an injury to the defendant is presumed and may warrant a new trial. *Bokemeyer v. State*, 355 S.W.3d 199, 203 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The presumption of harm may be rebutted if it is shown that the defendant was not injured because "the case was not discussed" or because "nothing prejudicial about the accused was said." *Green v. State*, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992), *disavowed on other grounds by Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). If there is evidence rebutting the presumption, reviewing courts should consider the evidence regardless of whether it was presented by the State or by the accused. *Bokemeyer*, 355 S.W.3d at 203. When deciding whether the presumption of harm has been rebutted, appellate courts "view the evidence in the

light most favorable to the trial court's ruling and defer to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor." *Id.* at 203-04. Moreover, the "testimony from the juror involved in the impermissible conversation is enough evidence to support a trial court's ruling" that the presumption had been rebutted. *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

As mentioned above, after the jury announced the punishment for James, the district court stated that juror Bradford informed the court that "he didn't hear my admonition . . . about not discussing the case. And he told me when he went home that evening he did discuss the case with his wife, not the punishment, not what we did here today, simply what happened prior to that time." Bradford then stated that he had discussed the case with a friend from church who had served on several juries but "discussed it in detail with" his wife. He also clarified that the conversations occurred "after we'd reached a verdict. I had not discussed any of this with anybody before we reached a verdict." Although Bradford related that he discussed the details of the case, he did not state that he was given any new information about the crimes in either of his conversations.

During the hearing, James asked Bradford, "Did your wife give you any feedback on what you had told her, verbal or otherwise?" Bradford responded, "She did. She said guilty, absolutely beyond a reasonable doubt." In addition, James asked whether his wife's statement had any impact on his ability to assess a punishment, and Bradford replied, "It has an impact on my ability to think clearly because truthfully if I'm racing through my brain trying to figure out did I make the right choice, then that makes it harder to go through the punishment phase." In addition, James asked if his conversation could have affected the sentence he imposed by "even a year," and Bradford replied that it was "hard to say. I don't know."

5

Regarding his conversation with his friend from church, Bradford explained that he told his friend that he felt terrible because "this is a difficult decision." Bradford also stated that they discussed some of the details about the case including the fact that the crime alleged in the case was sexual abuse of a minor and that James had confessed to the crime. Furthermore, Bradford communicated that his friend consoled him by stating that it was tough to serve on a jury in a case involving child abuse but that "at least you had his confession."

When asked if his conversation with his friend made it easier to impose a longer sentence, Bradford responded, "I was toward the low end as we began negotiations" and worked his way up through his discussions with the other jurors. Moreover, although Bradford admitted that his friend's statement made him "[s]omewhat more confident" in his decision to find James guilty, he explained that he did not rely on the conversation for assessing punishment because it was his responsibility to determine a punishment. When asked whether discussing the case with his wife made "it easier to assess some period of years or more number of years than you might have otherwise," James answered, "I don't believe it significantly affected the outcome. . . . I do not believe that I swung the group to a stiffer penalty." James also explained that he did not think that discussing the case with his wife "made [him] harsher" and clarified that he did not discuss the possible punishment range with her and that his wife never stated what she thought would be an appropriate punishment in the case. Finally, although Bradford stated that he had an extensive conversation with his wife about the facts of the case, he also related that he felt that the State had "proved its case beyond all reasonable doubt. I stand behind that."

In light of the standard of review that governs this case and in light of Bradford's explanation summarized above, including the fact that the conversations occurred after the jury had

already found James guilty and Bradford's statements indicating that he did not rely on either conversation when assessing punishment, we cannot conclude that the district court abused its discretion by concluding that the presumption of harm was rebutted or by failing to order a new trial in this case.

For all the reasons given, we overrule James's sole issue on appeal.

## CONCLUSION

Having overruled James's sole issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear,  Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed:   August 30, 2012

Do Not Publish