COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

ARLENA LINDLEY,                                        No. 08-08-00149-CR

§

         Appellant,                                         Appeal from

§

v.                                                          Criminal District Court No. 6

§

THE STATE OF TEXAS,                                    of Dallas County, Texas

§

         Appellee.                                          (TC # F-06-89089-X)

§

## O P I N I O N

Arlena Lindley appeals her conviction of injury to a child. Appellant waived her right to a jury trial and entered an open plea of guilty. The trial court found Appellant guilty and assessed punishment at imprisonment for a term of forty-five years. We affirm.

## FACTUAL SUMMARY

The indictment alleged that Appellant intentionally and knowingly, by omission, caused serious bodily injury to the complainant, Titches Lindley, a child fourteen years of age or younger, by failing to seek medical attention for him and by failing to protect him from Alonzo Turner III.[1] The indictment also alleged that Appellant had a legal and statutory duty to act and she had assumed care, custody, and control of the complainant. Appellant waived her right to a jury trial and entered an open plea of guilty to the indictment having rejected the State's plea offer of a ten year term of imprisonment. The State offered into evidence Appellant's written judicial confession admitting all of the elements of the offense alleged in the indictment. The record reflects that the trial court

---

[1] Turner is serving a life sentence for his role in the death of Titches Lindley.

admonished Appellant in accordance with Article 26.13 of the Code of Criminal Procedure. The court concluded that Appellant was mentally competent, that she understood the nature and consequences of the charge, and that Appellant's waivers and guilty plea were made knowingly, freely, and voluntarily. Thus, the trial court accepted Appellant's guilty plea. Both the State and defense offered evidence at the guilty plea regarding the offense.

Appellant and her son, Titches, lived in an apartment with Appellant's boyfriend, Alonzo Turner III. Appellant's friend, Latricia Love Chance, went to visit them early one morning. Chance saw Titches sitting outside in his pajamas eating oatmeal. Even though it was a chilly October morning, Titches was not wearing shoes. Chance went inside and saw Turner in the living room while Appellant was in a bedroom gathering Titches' clothes and preparing to leave. Chance went into the bedroom and visited with Appellant for about twenty minutes. Turner brought Titches inside the apartment and told him to finish his oatmeal. Turner became angry because Titches had defecated on himself, so he made Titches bend over and touch his toes while Turner struck him several times with a thick belt. Turner grabbed Titches' left arm and threw him against the wall. He threatened to "whoop" Titches unless he finished his oatmeal. Titches spit out the oatmeal and Turner pushed Titches' face into the oatmeal on the floor. Titches was crying and Turner put Titches on his back and stepped on his chest. Both Chance and Appellant saw what Turner was doing to Titches. Turner then picked up Titches by the neck and put his face in the toilet while flushing it. He brought Titches back into the bedroom and Titches appeared weak. Turner made Titches walk back and forth and threatened to "whoop" him again if he fell. When Titches reached Appellant, he told her he was tired. Chance testified that both she and Appellant were scared. Chance wanted to remove Appellant and Titches from the situation but Turner told them that Appellant had better not touch Titches or he would kill her. Despite that warning, Appellant reached for Titches as they were

leaving but Turner took the child away from her and slammed the door.

Chance and Appellant went first to a pay phone so Appellant could call for help but the phone was not working. They then went to the home of Chance's cousin, Anthony Love, and told him what Turner had done. Concerned and upset about what he had heard, Love offered his phone to Appellant so she could call the police, but she called Turner instead and asked where Titches was. Turner told her he was at a hospital but she knew it was not true. Love became angry because Appellant did not appear concerned about Titches, so he asked her to leave. They stayed at Love's house for about ten minutes before returning to the apartment. Turner had changed Titches' clothes and put a band-aid on his forehead. Turner gave Appellant some money and told her to go buy groceries and promised he had not done anything to hurt Titches. Appellant and Chance went to the grocery store, the dollar store, and a beauty supply house. After they finished shopping about forty minutes later, Chance dropped off Appellant at the apartment. Appellant called Chance later and told her Titches had died.

Appellant gave two written statements to police. In the first statement given on the day of the offense, she explained that Turner whipped Titches with a belt because he "use the bathroom" on himself. She yelled at Turner and he told her to get her things and leave. While removing her clothes from the closet, a friend came over and began talking to her. Turner came into the room and told her to leave. As they were leaving with Titches, Turner took Titches by the hand and said he was staying. They left but Appellant returned later and noticed Turner had changed Titches' clothes. When Appellant asked Titches if he were okay, he said he was tired. Appellant told him to lay down and go to sleep. Appellant went to the store and when she returned thirty or forty minutes later, Titches was gasping for breath with his eyes open wide and not blinking. Titches stopped breathing and Turner called an ambulance.

Later the same day, Appellant told the police officers she wanted to give them another statement because she had not included everything in the first one. In the second written statement, Appellant said that in addition to whipping Titches with a belt, Turner had put Titches' head in the toilet and rubbed his face in the carpet where Titches had vomited. When Turner began to choke Titches, Appellant tried to stop him but he pushed her down on the floor and told her to get out of the apartment.

Detective Warren Breedlove of the Dallas Police Department investigated the death of Titches Lindley. He learned through interviewing Appellant and witnesses that the child abuse began at approximately 8 or 9 a.m. and that Appellant left the residence at some point that morning, returned, and left again to go shopping. Paramedics were not called until Appellant returned to the apartment at around 1:30 or 1:45 that afternoon.

Dr. Jeffrey Barnard, the Chief Medical Examiner for Dallas County and the Director of the Southwestern Institute of Forensic Sciences, performed the autopsy and his report was admitted into evidence. Dr. Barnard found bruises and abrasions on the child's face, large bruises on the thighs and right side of the chest and rib cage, and bruises on the forearms. The body also had bruising on the right mid-back and extensive contusions of the lower back on both sides, the buttocks, and the legs. The internal examination revealed a large amount of hemorrhage in connection with the bruises on the body and a substantial laceration of the liver. Dr. Barnard also found fractured ribs. The child suffered loss of blood as a result of these injuries and died as the result of multiple blunt-force injuries. In Dr. Barnard's opinion, the injuries were consistent with being whipped with a belt, thrown against a wall, and kicked multiple times. If the child had been given medical care, however, he could have been resuscitated because the blood loss was a progressive event.

Appellant testified that Turner had physically abused both Titches and her in the past but she

had not been able to leave him because he threatened to kill her family. On the day Titches died, Appellant saw Turner whip him with a belt, throw him against a wall, and rub his face on the floor. During her direct examination, Appellant said she did not have any idea how serious the beating was and she did not have any idea that Titches was going to die that day. But on cross-examination, Appellant admitted she knew it was a serious beating. She tried to take Titches with her when she left the apartment but Turner would not allow it. Concerned about what Turner would do to Titches, Appellant and Chance drove to a pay phone. The pay phone was not working so they went to a friend's house. She used the friend's cell phone to call Turner and he told her he had taken Titches to a hospital. He then said they would take Titches to the hospital when she returned to the apartment. Both Appellant and Turner knew Titches needed hospital treatment. She did not call the police because she was afraid and she thought Turner might calm down if she did what he told her. Appellant and Chance then went to Anthony Love's house and Appellant again called Turner to find out if he had returned to the apartment.[2] Chance drove Appellant back to the apartment. Turner told Appellant that Titches was complaining that his stomach hurt. They wanted to take Titches to the hospital but they did not have any transportation because Chance said she had to return the car she was driving to the owner. Turner refused to let Appellant use his cell phone to call for an ambulance and he told her that if they took Titches to the hospital, the authorities would take him away from her. Turner forced Titches to run back and forth while the child complained he was tired. Appellant observed Titches stumbling but she believed he was just tired. Turner finally put Titches down on a bed. He told Appellant to go to the grocery store so she and Chance left the apartment. They returned in thirty to forty-five minutes and Appellant checked on Titches after carrying in the groceries. He appeared strange and had his eyes open wide while turning back and forth in the bed.

---

[2] Turner left the apartment at some point that morning.

When Turner told her to put away the groceries, she left the room. When she checked on him again, Titches was not breathing. Turner tried to tell Appellant Titches was okay, but she knew he was not, and Turner called 911. An ambulance arrived and transported Titches to the hospital. A police officer arrived at the apartment and took Appellant to the hospital.

At the conclusion of the evidence, the trial court found Appellant mentally competent to enter her plea and that he had made the plea freely and voluntarily. Based on the evidence presented, the court found Appellant guilty beyond a reasonable doubt of injury to a child as charged in the indictment. After hearing argument from the State and defense, the court assessed punishment at imprisonment for a term of forty-five years. This appeal follows.

## VOLUNTARINESS OF THE GUILTY PLEA

In two related issues, Appellant contends that her plea of guilty is involuntary because it was made without a complete understanding of the nature of the charge against her and the consequences of entering a guilty plea. Pointing to her testimony that she was unaware of the extent of the child's injuries, Appellant argues she could not have intentionally or knowingly caused serious bodily injury to her son by failing to protect him from Turner or by failing to seek medical care. Appellant does not allege that the trial court had a duty to withdraw the guilty plea when presented with this evidence, but instead contends that her guilty plea was involuntary and her right to due process has been violated because the record does not affirmatively show she had a full understanding of her guilty plea and its consequences. The State, *citing Mendez v. State*, 138 S.W.3d 334 (Tex.Crim.App. 2004), responds that Appellant's voluntariness challenge is waived because she did not request that her guilty plea be withdrawn and has raised her complaint for the first time on appeal. Appellant takes issue with the State's interpretation and application of *Mendez*.

Rule 33.1 of the Texas Rules of Appellate Procedure requires a party to preserve error for

appellate review by making a timely and specific objection or motion and obtaining an adverse ruling. TEX.R.APP.P. 33.1. This preservation requirement does not apply to two categories of errors: violations of rights which are waivable only and denials of absolute systemic requirements. *Mendez*, 138 S.W.3d at 342. A defendant has a right to plead not guilty. *Mendez*, 138 S.W.3d at 344. This is a waivable-only right, that is, one that must be implemented by the system unless expressly waived. *Id.* The waiver of the right to a plea of not guilty is surrounded by procedural protections both constitutional and statutory. *Id.* The constitutional rights that are affected may include the right to have the State prove guilt beyond a reasonable doubt and the right to confront and cross-examine witnesses against the defendant. *Id.* Due process of law requires that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id., quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Due process of law is not denied by a conviction based on a plea of guilty that is accompanied by a strong factual basis for the plea demonstrated by the State and a defendant's clearly expressed desire to enter it despite her professed belief in her innocence. *Id.*, *citing North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

In *Mendez*, the Court of Criminal Appeals held that a defendant has the right to change a plea of guilty to a plea of not guilty when evidence inconsistent with guilt is introduced during a jury or non-jury trial, but the trial court has no duty to change the plea *sua sponte*. *Id.* at 350. The court explained that a defendant's decision to plead guilty entails the waiver of some important, "waivable-only" rights. *Id.* Trial courts have a duty to implement those rights, but after a court has fulfilled those duties and a defendant has made a valid waiver of those rights, it is appropriate that the defendant be required to take some affirmative action to "don the armor again." *Id.*

Appellant does not contend that the trial court should have withdrawn her guilty plea after hearing the evidence at the plea proceeding. Instead, she argues that her guilty plea was involuntary because her testimony shows it was made without a complete understanding of the nature of the charge against her and without knowledge of the consequences of her guilty plea. Appellant seeks to distinguish her voluntariness and due process arguments from the argument made in *Mendez*.

Some courts, including this one, have held since *Mendez* that a defendant must preserve a complaint regarding the voluntariness of a guilty plea. *Starks v. State*, 266 S.W.3d 605, 613 (Tex.App.--El Paso 2008, no pet.); *Neely v. State*, No. 02-07-254-CR, 2008 WL 1932140 (Tex.App.--Fort Worth May 1, 2008, no pet.)(not designated for publication); *Wilson v. State*, Nos. 05-05-01100-CR, 05-05-01101-CR, 05-05-01102-CR, 2006 WL 1892381 (Tex.App.--Dallas Dec. 20, 2006, pet. ref'd). In *Wilson*, the Fifth Court of Appeals considered the issue in circumstances similar to the instant case where the defendant, like Appellant, contended on appeal that his plea was involuntary based on testimony introduced during the guilty plea proceeding. *Wilson*, 2006 WL 1892381. The court of appeals applied *Mendez,* noting that Wilson, like the defendant in *Mendez*, did not argue there was error in the proceedings leading up to, and including, his guilty plea. *Wilson*, 2006 WL 1892381 at *3. Because the trial court admonished Wilson pursuant to Article 26.16[3] of his constitutional and statutory rights both in writing and orally at the guilty plea, the court of appeals found that a *prima facie* showing had been made that Wilson's plea of guilty was knowing and voluntary, and the burden shifted to him to show he did not fully understand the consequences of his plea. *Wilson*, 2006 WL 1892381 at *3, *citing Mallet v. State*, 65 S.W.3d 59, 64 (Tex.Crim.App. 2001). The court of appeals concluded that, although Wilson did not argue that the trial court should have *sua sponte* withdrawn his guilty plea or conducted some

---

[3] TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon Supp. 2009).

other proceeding, his claim that his guilty plea was not voluntary based on his testimony at the punishment hearing could not be raised for the first time on appeal. *Id.*, *citing Mendez*, 138 S.W.3d at 350. The court of appeals further found that because Wilson waived his right to a jury trial and the trial court after hearing the punishment evidence found him guilty, the trial court fulfilled its role of deciding Wilson's guilt or innocence based on the evidence. *Id.*, *citing Aldrich v. State*, 104 S.W.3d 890, 895 (Tex.Crim.App. 2003).

Appellant is in the same circumstances as the defendant in *Wilson*. The record reflects that Appellant entered a guilty plea, signed written plea admonishments and a judicial confession admitting guilt, and waived her constitutional and statutory rights with an understanding of the consequences. Further, Appellant does not claim there was any error in the proceedings leading up to, and including, her guilty plea. She instead argues that her testimony shows she did not understand the nature of the charges against her because she testified she was unaware of the extent of the child's injuries, and therefore, she could not have intentionally or knowingly caused serious bodily injury to her son by failing to protect him from Turner or by failing to seek medical care. We agree with the Dallas Court of Appeals that a defendant who asserts her guilty plea is involuntary due to the introduction of evidence inconsistent with guilt at the guilty plea proceeding must seek to withdraw her guilty plea in order to preserve the issue for appellate review. *See Wilson*, 2006 WL 1892381 at *3, *citing Mendez*, 138 S.W.3d at 350. Because Appellant failed to timely request withdrawal of her plea of guilty, we conclude she is not permitted to raise the issue for the first time on appeal. *Id.*

Even assuming Appellant is not required to preserve this issue for review, we find it is without merit because Appellant has not carried her burden of showing she did not fully understand the charges against her or the consequences of her guilty plea. Appellant was properly admonished

before waiving her right to a jury trial, signing a judicial confession, and entering a plea of guilty. Despite her claim that she was unaware of the severity of her son's injuries, Appellant also testified she knew Turner had inflicted a serious beating on Titches and she contemplated calling an ambulance for him even before she left the apartment the second time. Appellant's contradictory testimony does not demonstrate she did not understand the nature of the charge against her. We overrule Issues One and Two. The judgment of the trial court is affirmed.

March 24, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Salas-Mendoza, Judge
Salas-Mendoza, Judge, sitting by assignment

(Do Not Publish)