COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





ARLENA LINDLEY,

                                    Appellant,

v.

THE STATE OF TEXAS, 

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-08-00149-CR

Appeal from
 Criminal District Court No. 6

of Dallas County, Texas

(TC # F-06-89089-X)



 

 

 




O P I N I O N

            Arlena Lindley appeals her conviction of injury to a child. Appellant waived her right to a
jury trial and entered an open plea of guilty. The trial court found Appellant guilty and assessed
punishment at imprisonment for a term of forty-five years. We affirm.
FACTUAL SUMMARY
            The indictment alleged that Appellant intentionally and knowingly, by omission, caused
serious bodily injury to the complainant, Titches Lindley, a child fourteen years of age or younger,
by failing to seek medical attention for him and by failing to protect him from Alonzo Turner III.


 
The indictment also alleged that Appellant had a legal and statutory duty to act and she had assumed
care, custody, and control of the complainant. Appellant waived her right to a jury trial and entered
an open plea of guilty to the indictment having rejected the State’s plea offer of a ten year term of
imprisonment. The State offered into evidence Appellant’s written judicial confession admitting all
of the elements of the offense alleged in the indictment. The record reflects that the trial court
admonished Appellant in accordance with Article 26.13 of the Code of Criminal Procedure. The
court concluded that Appellant was mentally competent, that she understood the nature and
consequences of the charge, and that Appellant’s waivers and guilty plea were made knowingly,
freely, and voluntarily. Thus, the trial court accepted Appellant’s guilty plea. Both the State and
defense offered evidence at the guilty plea regarding the offense.
            Appellant and her son, Titches, lived in an apartment with Appellant’s boyfriend, Alonzo
Turner III. Appellant’s friend, Latricia Love Chance, went to visit them early one morning. Chance
saw Titches sitting outside in his pajamas eating oatmeal. Even though it was a chilly October
morning, Titches was not wearing shoes. Chance went inside and saw Turner in the living room
while Appellant was in a bedroom gathering Titches’ clothes and preparing to leave. Chance went
into the bedroom and visited with Appellant for about twenty minutes. Turner brought Titches
inside the apartment and told him to finish his oatmeal. Turner became angry because Titches had
defecated on himself, so he made Titches bend over and touch his toes while Turner struck him
several times with a thick belt. Turner grabbed Titches’ left arm and threw him against the wall. 
He threatened to “whoop” Titches unless he finished his oatmeal. Titches spit out the oatmeal and
Turner pushed Titches’ face into the oatmeal on the floor. Titches was crying and Turner put Titches
on his back and stepped on his chest. Both Chance and Appellant saw what Turner was doing to
Titches. Turner then picked up Titches by the neck and put his face in the toilet while flushing it. 
He brought Titches back into the bedroom and Titches appeared weak. Turner made Titches walk
back and forth and threatened to “whoop” him again if he fell. When Titches reached Appellant, he
told her he was tired. Chance testified that both she and Appellant were scared. Chance wanted to
remove Appellant and Titches from the situation but Turner told them that Appellant had better not
touch Titches or he would kill her. Despite that warning, Appellant reached for Titches as they were
leaving but Turner took the child away from her and slammed the door. 
            Chance and Appellant went first to a pay phone so Appellant could call for help but the
phone was not working. They then went to the home of Chance’s cousin, Anthony Love, and told
him what Turner had done. Concerned and upset about what he had heard, Love offered his phone
to Appellant so she could call the police, but she called Turner instead and asked where Titches was. 
Turner told her he was at a hospital but she knew it was not true. Love became angry because
Appellant did not appear concerned about Titches, so he asked her to leave. They stayed at Love’s
house for about ten minutes before returning to the apartment. Turner had changed Titches’ clothes
and put a band-aid on his forehead. Turner gave Appellant some money and told her to go buy
groceries and promised he had not done anything to hurt Titches. Appellant and Chance went to the
grocery store, the dollar store, and a beauty supply house. After they finished shopping about forty
minutes later, Chance dropped off Appellant at the apartment. Appellant called Chance later and
told her Titches had died. 
            Appellant gave two written statements to police. In the first statement given on the day of
the offense, she explained that Turner whipped Titches with a belt because he “use the bathroom”
on himself. She yelled at Turner and he told her to get her things and leave. While removing her
clothes from the closet, a friend came over and began talking to her. Turner came into the room and
told her to leave. As they were leaving with Titches, Turner took Titches by the hand and said he
was staying. They left but Appellant returned later and noticed Turner had changed Titches’ clothes. 
When Appellant asked Titches if he were okay, he said he was tired. Appellant told him to lay down
and go to sleep. Appellant went to the store and when she returned thirty or forty minutes later,
Titches was gasping for breath with his eyes open wide and not blinking. Titches stopped breathing
and Turner called an ambulance. 
            Later the same day, Appellant told the police officers she wanted to give them another
statement because she had not included everything in the first one. In the second written statement,
Appellant said that in addition to whipping Titches with a belt, Turner had put Titches’ head in the
toilet and rubbed his face in the carpet where Titches had vomited. When Turner began to choke
Titches, Appellant tried to stop him but he pushed her down on the floor and told her to get out of
the apartment. 
            Detective Warren Breedlove of the Dallas Police Department investigated the death of
Titches Lindley. He learned through interviewing Appellant and witnesses that the child abuse
began at approximately 8 or 9 a.m. and that Appellant left the residence at some point that morning,
returned, and left again to go shopping. Paramedics were not called until Appellant returned to the
apartment at around 1:30 or 1:45 that afternoon.
            Dr. Jeffrey Barnard, the Chief Medical Examiner for Dallas County and the Director of the
Southwestern Institute of Forensic Sciences, performed the autopsy and his report was admitted into
evidence. Dr. Barnard found bruises and abrasions on the child’s face, large bruises on the thighs
and right side of the chest and rib cage, and bruises on the forearms. The body also had bruising on
the right mid-back and extensive contusions of the lower back on both sides, the buttocks, and the
legs. The internal examination revealed a large amount of hemorrhage in connection with the bruises
on the body and a substantial laceration of the liver. Dr. Barnard also found fractured ribs. The child
suffered loss of blood as a result of these injuries and died as the result of multiple blunt-force
injuries. In Dr. Barnard’s opinion, the injuries were consistent with being whipped with a belt,
thrown against a wall, and kicked multiple times. If the child had been given medical care, however,
he could have been resuscitated because the blood loss was a progressive event. 
            Appellant testified that Turner had physically abused both Titches and her in the past but she
had not been able to leave him because he threatened to kill her family. On the day Titches died,
Appellant saw Turner whip him with a belt, throw him against a wall, and rub his face on the floor. 
During her direct examination, Appellant said she did not have any idea how serious the beating was
and she did not have any idea that Titches was going to die that day. But on cross-examination,
Appellant admitted she knew it was a serious beating. She tried to take Titches with her when she
left the apartment but Turner would not allow it. Concerned about what Turner would do to Titches,
Appellant and Chance drove to a pay phone. The pay phone was not working so they went to a
friend’s house. She used the friend’s cell phone to call Turner and he told her he had taken Titches
to a hospital. He then said they would take Titches to the hospital when she returned to the
apartment. Both Appellant and Turner knew Titches needed hospital treatment. She did not call the
police because she was afraid and she thought Turner might calm down if she did what he told her. 
Appellant and Chance then went to Anthony Love’s house and Appellant again called Turner to find
out if he had returned to the apartment.


 Chance drove Appellant back to the apartment. Turner told
Appellant that Titches was complaining that his stomach hurt. They wanted to take Titches to the
hospital but they did not have any transportation because Chance said she had to return the car she
was driving to the owner. Turner refused to let Appellant use his cell phone to call for an ambulance
and he told her that if they took Titches to the hospital, the authorities would take him away from
her. Turner forced Titches to run back and forth while the child complained he was tired. Appellant
observed Titches stumbling but she believed he was just tired. Turner finally put Titches down on
a bed. He told Appellant to go to the grocery store so she and Chance left the apartment. They
returned in thirty to forty-five minutes and Appellant checked on Titches after carrying in the
groceries. He appeared strange and had his eyes open wide while turning back and forth in the bed. 
When Turner told her to put away the groceries, she left the room. When she checked on him again,
Titches was not breathing. Turner tried to tell Appellant Titches was okay, but she knew he was not,
and Turner called 911. An ambulance arrived and transported Titches to the hospital. A police
officer arrived at the apartment and took Appellant to the hospital. 
            At the conclusion of the evidence, the trial court found Appellant mentally competent to enter
her plea and that he had made the plea freely and voluntarily. Based on the evidence presented, the
court found Appellant guilty beyond a reasonable doubt of injury to a child as charged in the
indictment. After hearing argument from the State and defense, the court assessed punishment at
imprisonment for a term of forty-five years. This appeal follows.
VOLUNTARINESS OF THE GUILTY PLEA
            In two related issues, Appellant contends that her plea of guilty is involuntary because it was
made without a complete understanding of the nature of the charge against her and the consequences
of entering a guilty plea. Pointing to her testimony that she was unaware of the extent of the child’s
injuries, Appellant argues she could not have intentionally or knowingly caused serious bodily injury
to her son by failing to protect him from Turner or by failing to seek medical care. Appellant does
not allege that the trial court had a duty to withdraw the guilty plea when presented with this
evidence, but instead contends that her guilty plea was involuntary and her right to due process has
been violated because the record does not affirmatively show she had a full understanding of her
guilty plea and its consequences. The State, citing Mendez v. State, 138 S.W.3d 334 (Tex.Crim.App.
2004), responds that Appellant’s voluntariness challenge is waived because she did not request that
her guilty plea be withdrawn and has raised her complaint for the first time on appeal. Appellant
takes issue with the State’s interpretation and application of Mendez.
            Rule 33.1 of the Texas Rules of Appellate Procedure requires a party to preserve error for
appellate review by making a timely and specific objection or motion and obtaining an adverse
ruling. Tex.R.App.P. 33.1. This preservation requirement does not apply to two categories of errors: 
violations of rights which are waivable only and denials of absolute systemic requirements. Mendez,
138 S.W.3d at 342. A defendant has a right to plead not guilty. Mendez, 138 S.W.3d at 344. This
is a waivable-only right, that is, one that must be implemented by the system unless expressly
waived. Id. The waiver of the right to a plea of not guilty is surrounded by procedural protections
both constitutional and statutory. Id. The constitutional rights that are affected may include the right
to have the State prove guilt beyond a reasonable doubt and the right to confront and cross-examine
witnesses against the defendant. Id. Due process of law requires that “[w]aivers of constitutional
rights not only must be voluntary but must be knowing, intelligent acts done with sufficient
awareness of the relevant circumstances and likely consequences.” Id., quoting Brady v. United
States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Due process of law is not denied
by a conviction based on a plea of guilty that is accompanied by a strong factual basis for the plea
demonstrated by the State and a defendant’s clearly expressed desire to enter it despite her professed
belief in her innocence. Id., citing North Carolina v. Alford, 400 U.S. 25, 38, 91 S.Ct. 160, 27
L.Ed.2d 162 (1970).
            In Mendez, the Court of Criminal Appeals held that a defendant has the right to change a plea
of guilty to a plea of not guilty when evidence inconsistent with guilt is introduced during a jury or
non-jury trial, but the trial court has no duty to change the plea sua sponte. Id. at 350. The court
explained that a defendant’s decision to plead guilty entails the waiver of some important,
“waivable-only” rights. Id. Trial courts have a duty to implement those rights, but after a court has
fulfilled those duties and a defendant has made a valid waiver of those rights, it is appropriate that
the defendant be required to take some affirmative action to “don the armor again.” Id.
            Appellant does not contend that the trial court should have withdrawn her guilty plea after
hearing the evidence at the plea proceeding. Instead, she argues that her guilty plea was involuntary 
because her testimony shows it was made without a complete understanding of the nature of the
charge against her and without knowledge of the consequences of her guilty plea. Appellant seeks
to distinguish her voluntariness and due process arguments from the argument made in Mendez.
            Some courts, including this one, have held since Mendez that a defendant must preserve a
complaint regarding the voluntariness of a guilty plea. Starks v. State, 266 S.W.3d 605,
613 (Tex.App.--El Paso 2008, no pet.); Neely v. State, No. 02-07-254-CR, 2008 WL 1932140
(Tex.App.--Fort Worth May 1, 2008, no pet.)(not designated for publication); Wilson v. State,
Nos. 05-05-01100-CR, 05-05-01101-CR, 05-05-01102-CR, 2006 WL 1892381 (Tex.App.--Dallas
Dec. 20, 2006, pet. ref’d). In Wilson, the Fifth Court of Appeals considered the issue in
circumstances similar to the instant case where the defendant, like Appellant, contended on appeal
that his plea was involuntary based on testimony introduced during the guilty plea proceeding. 
Wilson, 2006 WL 1892381. The court of appeals applied Mendez, noting that Wilson, like the
defendant in Mendez, did not argue there was error in the proceedings leading up to, and including,
his guilty plea. Wilson, 2006 WL 1892381 at *3. Because the trial court admonished Wilson
pursuant to Article 26.16


 of his constitutional and statutory rights both in writing and orally at the
guilty plea, the court of appeals found that a prima facie showing had been made that Wilson’s plea
of guilty was knowing and voluntary, and the burden shifted to him to show he did not fully
understand the consequences of his plea. Wilson, 2006 WL 1892381 at *3, citing Mallet v. State,
65 S.W.3d 59, 64 (Tex.Crim.App. 2001). The court of appeals concluded that, although Wilson did
not argue that the trial court should have sua sponte withdrawn his guilty plea or conducted some
other proceeding, his claim that his guilty plea was not voluntary based on his testimony at the
punishment hearing could not be raised for the first time on appeal. Id., citing Mendez, 138 S.W.3d
at 350. The court of appeals further found that because Wilson waived his right to a jury trial and
the trial court after hearing the punishment evidence found him guilty, the trial court fulfilled its role
of deciding Wilson’s guilt or innocence based on the evidence. Id., citing Aldrich v. State, 104
S.W.3d 890, 895 (Tex.Crim.App. 2003).
            Appellant is in the same circumstances as the defendant in Wilson. The record reflects that
Appellant entered a guilty plea, signed written plea admonishments and a judicial confession
admitting guilt, and waived her constitutional and statutory rights with an understanding of the
consequences. Further, Appellant does not claim there was any error in the proceedings leading up
to, and including, her guilty plea. She instead argues that her testimony shows she did not
understand the nature of the charges against her because she testified she was unaware of the extent
of the child’s injuries, and therefore, she could not have intentionally or knowingly caused serious
bodily injury to her son by failing to protect him from Turner or by failing to seek medical care. We
agree with the Dallas Court of Appeals that a defendant who asserts her guilty plea is involuntary
due to the introduction of evidence inconsistent with guilt at the guilty plea proceeding must seek
to withdraw her guilty plea in order to preserve the issue for appellate review. See Wilson, 2006 WL
1892381 at *3, citing Mendez, 138 S.W.3d at 350. Because Appellant failed to timely request
withdrawal of her plea of guilty, we conclude she is not permitted to raise the issue for the first time
on appeal. Id.
            Even assuming Appellant is not required to preserve this issue for review, we find it is
without merit because Appellant has not carried her burden of showing she did not fully understand
the charges against her or the consequences of her guilty plea. Appellant was properly admonished
before waiving her right to a jury trial, signing a judicial confession, and entering a plea of guilty. 
Despite her claim that she was unaware of the severity of her son’s injuries, Appellant also testified
she knew Turner had inflicted a serious beating on Titches and she contemplated calling an
ambulance for him even before she left the apartment the second time. Appellant’s contradictory
testimony does not demonstrate she did not understand the nature of the charge against her. We
overrule Issues One and Two. The judgment of the trial court is affirmed.

March 24, 2010                                                                                                                                               ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Salas-Mendoza, Judge
Salas-Mendoza, Judge, sitting by assignment

(Do Not Publish)