02-11-033-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00033-CR


 
 
 lawrence Donovan
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 371ST
District Court OF Tarrant COUNTY

----------

OPINION

----------

Introduction

In
this direct appeal from a judgment adjudicating guilt, Appellant Lawrence
Donovan claims that the trial court violated his due process rights when it
revoked his community supervision (probation) for violating terms to which he
had acquiesced for over a year.  We affirm.

Background
Facts and Procedural History

In
2004, a grand jury indicted Appellant for aggravated sexual assault and
indecency with a child.  In 2006, Appellant pled no contest to injury to a
child in exchange for five years’ deferred-adjudication probation.  The trial
court specifically found Appellant not guilty of aggravated sexual assault and
indecency with a child and granted his motion to expunge the records relating
to those counts.[1]

The
trial court judge was replaced after the next election.  In March 2008, his
successor extended Appellant’s probation and modified its terms to require that
Appellant submit to an evaluation for sex-offender treatment and successfully
complete the prescribed treatment.  There is no record that Appellant objected to
these terms at the time they were imposed.[2]

In
August 2008, Appellant first met with Michael Strain, an approved sex-offender treatment
provider, and began group-counseling sessions that September.  Strain testified
that successful completion of the treatment program generally requires that probationers
meet thirty goals over a three-year period but that some goals may be waived to
accommodate individual circumstances.  For instance, the goal of admitting
responsibility for a sex offense is commonly waived for persons on probation for
non-sex offenses.[3]  Strain testified that the
trial court had instructed him not to require Appellant to admit that he had
committed a sex offense.

In his
first year of treatment, Appellant completed eight treatment goals.  On August
24, 2009, at a conference between the trial court, prosecutor, Appellant’s
counsel, Appellant’s probation officer, and Strain, all agreed that Appellant
could meet the program goals without mentioning or admitting guilt for the expunged
sex offenses.  The trial court concluded that Appellant would not be required
to assume responsibility for those offenses but that he would be required to continue
sex-offender treatment and complete its goals.  By February 2010, Appellant had
completed eleven treatment goals.

On February
3, 2010, Appellant told Strain that he would not discuss the expunged offenses during
treatment sessions because it was illegal for him to do so.  Strain’s
recollection of the trial court’s instructions was that Appellant was not
required to admit responsibility for the original charged offenses but not that
it would be illegal to discuss them.  He told Appellant that if it was illegal
to discuss the sexual nature of the original charges, he was uncertain whether
any useful treatment work could be done, and pending some clarification of the
matter, he discontinued Appellant’s treatment.

Appellant
testified that his attorneys met with the trial court on February 8, 2010, and
that the trial court indicated that it wanted to hear from the probation
department on the issue.  Appellant’s probation supervisor, Mayra Pinedo,
testified that she stressed to Appellant that while the matter was pending
review he still would be held accountable for meeting his treatment goals by
the second-year deadline.  She further testified that she offered for him to
choose another approved provider so that he could complete the goals. 
Appellant refused Pinedo’s offer to attend treatment with another provider and
did not attend any further treatment sessions before the second-year treatment
deadline.

The
State filed its petition to adjudicate on October 20, 2010, alleging that
Appellant had violated his probation by not attending sex-offender treatment
and not completing two-thirds of his treatment by the two-year deadline.  After
a four-day hearing, the trial court granted the State’s petition, adjudicated
Appellant’s guilt, revoked his probation, and sentenced him to four years’
confinement.

Discussion

Appellant
contends that the trial court abused its discretion by revoking his probation
upon finding that he failed to attend and complete sex-offender treatment as
ordered because in Ex parte Evans, 338 S.W.3d 545 (Tex. Crim. App.
2011), the court of criminal appeals “severely curtailed the requirement of Sex
Offender Treatment for parolees convicted of non-sex offenses (there, such as
here, Injury to a Child.).”  Appellant concedes that Evans allows for
situations in which a probationer or parolee can be required to attend and
complete sex offender treatment as a condition of probation or release,
respectively.  He appears to argue, however, that he was denied due process when
the trial court modified his probation to require him to attend and complete
sex offender treatment and that he was only required to submit to these
conditions because he had originally been charged with a sex offense.  He
stresses that the trial court found him not guilty of the originally charged
sex offenses that were later expunged.

But
this curious history has no bearing on the dispositive issue in this case
because whatever merit may lie in Appellant’s contentions, Evans did not
alter, nor does Appellant claim that it altered, the rules for preserving
error.  It is still the law in this state that a defendant may forfeit
constitutional complaints by not raising them in the trial court.  Fuller v.
State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), cert. denied, 555
U.S. 1105 (2009); Alexander v. State, 137 S.W.3d 127, 130–31 (Tex.
App.––Houston [1st Dist.] 2004, pet. ref’d) (holding that a due process
complaint was forfeited by failure to assert the complaint in the trial court).[4]

To
preserve error for appellate review, a party must make a timely and specific
objection or motion at trial, and there must be an adverse ruling by the trial
court.  Tex. R. App. P. 33.1(a); Aldrich v. State, 104 S.W.3d 890, 894–95
(Tex. Crim. App. 2003).  In Speth v. State, the court of criminal
appeals held that to complain about a probation condition on appeal, an
appellant must have first challenged the condition in the trial court.  6 S.W.3d
530, 534 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1088 (2000).  In
Speth, the court of criminal appeals also stated that conditions of
probation that are not objected to are affirmatively accepted.  Id.

In Rickels
v. State, the court of criminal appeals recognized an exception to this
general rule of preservation when a defendant does not have an opportunity to
object to the probation condition in the trial court at the time the condition
is imposed.  108 S.W.3d 900, 902 (Tex. Crim. App. 2003).  In Rickels,
the trial court modified a probation condition without a hearing and Rickels
had no opportunity to object to this modification in the trial court.  Id. 
In this circumstance, the court of criminal appeals addressed the merits of
Rickels’s appeal, even though he raised the issue for the first time on appeal. 
Id.; see also Pearson v. State, 994 S.W.2d 176, 179 (Tex. Crim. App.
1999) (stating that when defendant does not have opportunity to object at
sentencing hearing, a motion for new trial preserves error).

Here,
the Rickels exception does not apply because the record shows that Appellant
had the opportunity to object to the modified conditions.  He and the trial
judge both signed the conditions.  Almost a year afterward, Appellant took
steps to object to the conditions, filing a motion to modify, in which he contended
that the conditions violated due process, but the record does not show that he ever
presented his motion to the trial court or had it ruled on.

The
record does show, however, that Appellant’s lawyers had a conference with the
trial court after Appellant had complied with the conditions for a year, and
that during that conference the trial court agreed to waive the treatment goal
of Appellant’s admitting responsibility for a sex offense.  Moreover, at the
adjudication hearing Appellant’s counsel announced ready and did not argue the
issue they now present on appeal.  And although counsel for Appellant mentioned
in passing at the adjudication hearing that Appellant objected to “being
labeled as a sex offender,” he conceded that Appellant did not object to the
conditions of having to submit to a sex offender treatment evaluation and to complete
the prescribed treatment. [5]  Further,
at the conclusion of the adjudication hearing, counsel urged the trial court to
maintain Appellant on probation and acknowledged that Appellant was bound to
comply with the conditions if the trial court did so.   

Because
the record shows that Appellant did not object to the complained-of conditions by
pursuing his motion to amend as a prerequisite to filing an application for
writ of habeas corpus[6] or by presenting written
objections to the trial court at any point between the time the conditions were
imposed and the adjudication hearing––despite his being well-represented by
counsel and having multiple opportunities to do so––we hold that Appellant has
forfeited his claims for review.  Accordingly, we overrule all of his points
and affirm the trial court’s judgment.  See Rickels, 108 S.W.3d at 902, Speth,
6 S.W.3d at 534; Jackson v. State, No. 02-09-00258-CR, 2010 WL 5186811,
at *4–5 (Tex. App.––Fort Worth Dec. 23, 2010, no pet.) (mem. op., not
designated for publication); see also Beatty v. State, No.
01-08-00335-CR, 2010 WL 2133870, at *11 (Tex. App.––Houston [1st Dist.] May 27,
2010, pet. ref’d) (mem. op., not designated for publication); Harrison v.
State, No. 05-08-01362-CR, 2009 WL 3631820, at *3 (Tex. App.—Dallas Nov. 4,
2009, pet. ref’d) (not designated for publication).

Conclusion

Having
overruled all of Appellant’s points, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  DAUPHINOT,
MEIER, and GABRIEL, JJ.

DAUPHINOT,
J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  July 26, 2012

 




 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00033-CR


 
 
 Lawrence Donovan
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

DISSENTING
OPINION

----------

Respectfully,
I cannot agree with the majority’s conclusion that “despite his being
well-represented by counsel and having multiple opportunities to do
so[,] . . . Appellant has forfeited his claims for review.”[7] 
The majority does not explain how Appellant could object when his lawyer did
not.  Nor does the majority explain how Appellant could know that Michael
Strain, who is neither a judge nor a community supervision officer, would have
the power to create conditions of community supervision that were never ordered
by the trial court except by general delegation.  Appellant argues that the
trial court abused its discretion by revoking his community supervision.  I
would hold that Appellant is correct.

Appellant
was charged by indictment with one count of aggravated sexual assault of a
child under seventeen years of age and one count of indecency with a child by
contact.  The indictment was amended by interlineation to add a third count of
bodily injury to a child.  Appellant entered his plea of nolo contendere to
count three of the indictment pursuant to a plea agreement, and the trial court
explicitly acquitted Appellant of the two sexual offenses.  The trial court
placed Appellant on deferred adjudication community supervision for five
years.  The trial court also entered an order expunging the records pertaining
to the two sexual offenses.  There is no record of any opposition by the State
to the expunction order.  The expunction order itself, however, was
inexplicably destroyed.

Subsequently,
the trial judge was defeated for reelection, and the new trial judge amended
the conditions of Appellant’s community supervision to include a requirement
that Appellant serve time in jail as a condition of community supervision and
that he complete sex offender treatment.  The record reflects no grounds for
the amendment that had not been before the prior trial judge.  Nor does the
record reflect whether the amendment was ordered in court or in the community
supervision office, whether Appellant was informed that he could object to the
amendment or seek advice of counsel, or whether he was represented by counsel
when the new trial judge amended the conditions of community supervision.

A
timeline is necessary to fully understand the issues of forfeiture and
preservation:

August
23, 2006               Appellant was acquitted of sexual offenses, convicted of
injury to a child, placed on deferred adjudication community supervision for
five years, and served with conditions of community supervision.  He was not placed
on the sex offender caseload.  At some point, by
agreement with the district attorney’s office, an expunction order was entered
regarding the sex offenses.

 

August
25, 2006               The trial court modified conditions of community supervision
from “Do not use, possess, or consume any alcoholic beverage” to “No excessive
consumption of any alcoholic beverage.”

 

March
24, 2008                The new trial judge extended community supervision for
one year and modified conditions of community supervision to “Do not use,
possess or consume any alcoholic beverage.  Do not refuse a breath, blood,
urine or field sobriety test as requested by a peace officer or supervision
officer.”

 

March 24, 2008                The new trial judge amended
community supervision conditions to place Appellant on the sex offender
caseload and to require him to comply with all terms and conditions of the sex
offender caseload except registration as a sex offender.

 

November 17, 2008          The new trial judge amended conditions
of community supervision to require “Confinement TCJ as COP 16 days begins Nov.
21, 2008 Fridays by 9 pm and out Mondays by 5 am.”

 

December 1, 2008            The new trial judge amended conditions
of community supervision to change the dates of work-release, which she had
imposed on November 17, 2008.

 

February 2, 2009              Appellant’s attorney filed “DEFENDANT’S
MOTION FOR MODIFICATION OF CONDITIONS OF PROBATION.”  Appellant’s motion states
that “the only reason his conditions of probation were amended to require
successful completion of the sex offender treatment program was because of
Judge Westfall’s concern over the Community Supervision Community Development’s
report to her that [Appellant] had originally been charged with sex offenses—the
same offenses for which he had been found not guilty, and for which the Tarrant
County District Clerk’s Office records were expunged.”  This statement was
never controverted by the State.

 

August 24, 2009               En camera meeting with lawyers
occurred.

 

October 20, 2010              The State filed its “FIRST PETITION
TO PROCEED TO ADJUDICATION.”  The trial court issued an alias capias for the
arrest of Appellant and ordered him held without bond.

 

October 26, 2010              Appellant’s attorney entered a notice
of representation.  The trial court set bond and imposed conditions.

 

November 3, 2010            The warrant for Appellant’s arrest was
executed.

 

January 7, 2011                The hearing on the State’s motion
to proceed to adjudication began.

 

January 18, 2011              The trial court granted the State’s
motion, adjudicated Appellant’s guilt, and imposed a four-year sentence.

Appellant
participated in the sex offender treatment program until he was required to
discuss the facts of the two offenses of which he had been acquitted.  Michael
Strain had been given a copy of the offense report containing descriptions of
the expunged offenses as well as descriptions of the offense of which Appellant
had been convicted.  When Strain told Appellant that he would have to discuss
the facts of the allegations upon which the expunged offenses were based,
Appellant told Strain that it was illegal for him to comply with Strain’s
requirement.  The majority does not address this issue, holding, instead, that
Appellant did not object.  Although his lawyer did not object until he had
opportunity, Appellant clearly objected when he told Strain that he could not
comply with Strain’s directive.  Appellant was not in court, and there is no
showing that he was aware of the proper procedure for complaining about a
condition of community supervision or that he knew the proper vehicle for
lodging a legally valid objection.  But Appellant was correct when he told Strain
that it was illegal for him to discuss expunged cases.

Article
55.03 of the Texas Code of Criminal Procedure provides,

When
the order of expunction is final:

                    (1)
the release, maintenance, dissemination, or use of the expunged records and
files for any purpose is prohibited;

                    (2)
except as provided in Subdivision (3) of this article, the person arrested may
deny the occurrence of the arrest and the existence of the expunction order; 
and

                    (3)
the person arrested or any other person, when questioned under oath in a
criminal proceeding about an arrest for which the records have been expunged,
may state only that the matter in question has been expunged.[8]

As
the majority acknowledges, 

Strain’s recollection
of the trial court’s instructions was that Appellant was not required to admit
responsibility for the original charged offenses but not that it would be illegal
to discuss them.  He told Appellant that if it was illegal to discuss the
sexual nature of the original charges, he was uncertain whether any useful
treatment work could be done, and pending some clarification of the matter, he
discontinued Appellant’s treatment.[9]

That
is, Appellant did not abandon Strain’s program.  Strain abandoned him because
Appellant understood article 55.03 to mean that dissemination of the facts and
allegations contained in the expunged records was prohibited.  The trial court
did not explain to Appellant how the statute did not apply to him.  Other
requirements of the sex offender caseload included detailed discussions of Appellant’s
sexual history, polygraph tests regarding sexual activity, and other admissions
regarding “victims.”

Like
the applicant in Ex parte Evans, who was successful on parole for
eighteen months before the Texas Department of Criminal Justice unlawfully
added sex offender conditions to his conditions of parole,[10] Appellant was doing
well on community supervision until the trial court amended his conditions to
place him on the sex offender caseload.  The new trial judge clearly stated on
the record that she did not agree that the expunction should have been granted
by the prior trial judge.  Her statements included, “So he got an illegal
expunction.”  She also referred to it as a “baseless expunction.”  She
maintained her position, despite the facts that, as pointed out to her, the
district attorney’s office had agreed to the expunction, and it had not been
appealed.

When
Appellant was placed on the sex offender caseload, he was apparently in
compliance with the conditions of his community supervision.  He had a
long-standing ministry with the Roman Catholic Church, was a decorated Air
Force veteran who had served during the Vietnam War era, and was employed as a
nuclear physicist with the United States Nuclear Regulatory Commission.  He had
earned two masters degrees and had received a bachelor of science and physics
degree from Duke University.  As was the case for the applicant in Ex parte
Evans,[11] Appellant’s life quickly
went downhill after being placed on the sex-offender caseload.

Due
process requires a rational relationship between the offense and the
obligations of community supervision.  If restitution is ordered, a defendant
may be ordered to pay restitution only to the complainants in the cases of
which he was actually convicted.[12] 
There must be not only a rational relationship between the offense and the
conditions of community supervision but also recognition of the constitutional
rights of the probationer.  A probationer cannot be ordered to do an act that
violates his constitutional rights as balanced with the goals of community
supervision.[13]

The
record does not reflect any action by Appellant that justifies the trial
court’s transferring him to the sex offender caseload.  From the record, the
transfer appears to have been ordered because the new trial judge did not agree
with the ruling of the former trial judge in acquitting Appellant of the two
sex offenses and granting the agreed-upon expunction.

The
State argues, and the majority holds, that Appellant should have objected to
the amended conditions of community supervision.  But the order provides no
notice to Appellant that he would be required to discuss sex offenses of which
he had been acquitted as well as possible offenses with which he had never been
charged.  When Appellant learned that he was expected to admit to those
offenses, he objected to Mike Strain.  The trial judge did intervene, then, to
countermand Strain’s requirement that Appellant actually admit to the offenses
of which he had been acquitted.

The
record does not reflect that Appellant was represented by counsel when the
trial court amended his conditions of community supervision or even that the
amendment occurred in open court.  Nor is there any indication that Appellant
was aware either of his ability to object or of what the amendments to his
conditions of community supervision entailed.  As the Supreme Court
of the United States explained in regard to statements made in response to
custodial interrogation,

The abdication of the
constitutional privilege—the choice on his part to speak to the police—was not
made knowingly or competently because of the failure to apprise him of his
rights; the compelling atmosphere of the in-custody interrogation, and not an
independent decision on his part, caused the defendant to speak.

.
. . . 

At the outset, if a person in custody is to
be subjected to interrogation, he must first be informed in clear and
unequivocal terms that he has the right to remain silent.  For those unaware of
the privilege, the warning is needed simply to make them aware of it—the
threshold requirement for an intelligent decision as to its exercise.  More
important, such a warning is an absolute prerequisite in overcoming the
inherent pressures of the interrogation atmosphere.  It is not just the
subnormal or woefully ignorant who succumb to an interrogator’s imprecations,
whether implied or expressly stated, that the interrogation will continue until
a confession is obtained or that silence in the face of accusation is itself
damning and will bode ill when presented to a jury.  Further, the warning will
show the individual that his interrogators are prepared to recognize his
privilege should he choose to exercise it.

The Fifth Amendment privilege is so
fundamental to our system of constitutional rule and the expedient of giving an
adequate warning as to the availability of the privilege so simple, we will not
pause to inquire in individual cases whether the defendant was aware of his
rights without a warning being given.  Assessments of the knowledge the
defendant possessed, based on information as to his age, education,
intelligence, or prior contact with authorities, can never be more than
speculation; a warning is a clearcut fact.  More important, whatever the background
of the person interrogated, a warning at the time of the interrogation is
indispensable to overcome its pressures and to insure that the individual knows
he is free to exercise the privilege at that point in time.

The warning of the right to remain silent
must be accompanied by the explanation that anything said can and will be used
against the individual in court.  This warning is needed in order to make him
aware not only of the privilege, but also of the consequences of forgoing it.  It
is only through an awareness of these consequences that there can be any
assurance of real understanding and intelligent exercise of the privilege.  Moreover,
this warning may serve to make the individual more acutely aware that he is
faced with a phase of the adversary system—that he is not in the presence of
persons acting solely in his interest.[14]

A
defendant in a criminal case does not lose his right against self-incrimination
under either the Constitution of the United States or the Constitution of the
State of Texas when he is placed on community supervision.[15] 
Yet the trial court granted the State’s motion to proceed to adjudication
because Appellant refused to discuss underlying facts of the cases of which he
had been acquitted and which had been expunged and refused to discuss sexual
activity that might reveal acts for which he could be criminally prosecuted.  Essentially,
the trial court revoked Appellant’s community supervision and proceeded to
adjudication of his guilt because he invoked his constitutional right not to
provide evidence against himself, resulting in Strain’s expelling Appellant
from his sex offender program.

I
would hold that the trial court abused its discretion (1) by placing Appellant
on the sex offender caseload, (2) by ordering, without hearing or benefit of
counsel, jail confinement as a condition of community supervision, (3) by
delegating to Mike Strain the authority to set the conditions of community
supervision, (4) by requiring Appellant to discuss the details of offenses of
which he had been acquitted and the records which had been expunged, and (5) by
requiring Appellant to discuss uncharged sexual activity which could have been
illegal.  I would also hold that the trial court abused its discretion by
revoking Appellant’s community supervision because of his attempt to comply
with article 55.03.  That is, I would hold that the trial court abused its
discretion by revoking Appellant’s community supervision and proceeding to
adjudication because the trial court found that Appellant, who had not been
convicted of a sex offense, had failed to comply with the sex offender caseload
conditions promulgated by a person who was neither a judge nor a community
supervision officer and based on records which had been ordered expunged and
Appellant’s refusal to reveal facts that could lead to his criminal
prosecution.

Because
the majority does not so hold, I must respectfully dissent.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

DELIVERED:  July 26, 2012









[1]The parties seem to agree
that Appellant was not entitled to an expunction but that the expunction order
has not been rescinded.  See Tex. Code Crim. Proc. Ann. art. 55.01(c)
(West Supp. 2011) (prohibiting expunction for person convicted or subject to
prosecution for offense arising from same criminal episode as offense for which
expunction sought).





[2]The clerk’s record shows
that Appellant filed a motion to modify the conditions of his probation on
February 2, 2009, asserting that the sex-offender-treatment requirements
violated due process.  There is no record, however, that Appellant presented his
motion to the trial court or that the trial court ruled on it.  Appellant’s
counsel conceded at the adjudication hearing that no objection was made to the
modified conditions and that Appellant attempted to fully comply with them.





[3]Strain estimated that ten
to fifteen percent of defendants in sex-offender treatment are not charged with
sex offenses.





[4]Clearly, the dissent disapproves
of the trial court’s handling of this matter.  And while the majority, too, may
not agree with adding sex-offender conditions to probation for a non-sex
offense, principles of judicial restraint, the rules of error preservation,
this court’s precedents and those from the court of criminal appeals all compel
us to resist the temptation to reach out and substitute our judgment for the
trial court’s on issues that––no matter how compelling––are not preserved for
our review.





[5]Addressing the trial court
at the adjudication hearing, counsel said, 

[W]hen you ordered that Mr. Donovan go into sex
offender treatment, there was no objection to that.  He attempted to do exactly
what you asked him to do.  It seems that he was doing all right in that until
the issue came up about the expunction. . . .

 All we’re saying is . . . tell us . . . how you want
this finished, and let Mr. Donovan finish these goals so he can complete what
you’ve asked him to do.  Even though we’re – we really object to the fact that
he is being labeled as a sex offender, let’s put that aside for a moment and
say help us . . . and then let him finish the probation.





[6]See Tex. Code Crim.
Proc. Ann. art. 11.072, § 3(b) (West 2005).





[7]Majority op. at 8.





[8]Tex. Code Crim. Proc. Ann.
art. 55.03 (West 2006).





[9]Majority op. at 3–4.





[10]338 S.W.3d 545,
546, 553, 556 (Tex. Crim. App. 2011).





[11]Id. at 548.





[12]Martin v. State,
874 S.W.2d 674, 677 (Tex. Crim. App. 1994).





[13]Ex parte Dangelo,
339 S.W.3d 143, 148–49 (Tex. App.—Fort Worth 2010), aff’d, Nos. PD–0769–11,
PD–0770–11, 2012 WL 2327813 (Tex. Crim. App. 2012).





[14]Miranda v. Arizona, 384 U.S. 436, 465–69, 86 S. Ct. 1602, 1623–25
(1966) (citations omitted).





[15]Dangelo,
2012 WL 2327813, at *4.