**Opinion filed July 26, 2012**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-10-00238-CR

_____

## THELMA MALDONADO A/K/A THELMA MALDONADO LOMAS A/K/A TAMMY MALDONADO, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17196B**

## M E M O R A N D U M   O P I N I O N

Thelma Maldonado a/k/a Thelma Maldonado Lomas a/k/a Tammy Maldonado entered an open guilty plea to the intentional murder of Michael Myrick and a plea of "true" to a prior felony of robbery alleged for enhancement. She signed written plea admonishments, a judicial confession admitting guilt, and a written waiver of jury trial. The trial court found appellant guilty of murder and assessed her punishment at life in the Institutional Division of the Texas Department of Criminal Justice.

During the disposition hearing, appellant's videotaped statement to the investigating officer was introduced into evidence. Although she admitted stabbing the victim, she asserted that she did not mean to hurt him. In three issues, appellant asserts that (1) the evidence was insufficient for conviction because she lacked the necessary intent to commit murder; (2) the trial court should have sua sponte withdrawn her guilty plea when it heard her statement that she did not intend to kill the victim; and (3) the trial court erred in not considering all the evidence when it accepted her guilty plea because her statement created a fact issue concerning intent, an essential element of the offense charged. We affirm.

*Background Facts*

Michael Myrick, the victim, invited some friends to his house on Briarwood Street in Abilene for a party after they left a club when it closed. Approximately thirty people showed up for the party; a number of them were not part of Myrick's group of friends.

One of appellant's sons, Albert Lomas; and his cousin, Jason Anderson; and a friend, Kaleb Covarrubias, appeared at the party even though they were virtually unknown to Myrick's friends.[1] Several witnesses testified that Albert, Jason, and Kaleb were rude and disrespectful to Myrick. They were yelling obscenities at Myrick, and he told them to leave. The six or seven people in the Lomas group left through the back door. Witnesses then saw Covarrubias throw a beer bottle that shattered Myrick's front door.

Myrick went out his front door and chased the Lomas group as they left in their blue pickup. Amanda Powell and Modesto Lozano, two friends of Myrick, saw Myrick hanging on (or being pulled in) to the passenger window of the pickup; he and the group in the pickup were yelling at each other. Amanda and Modesto pulled Myrick away from the pickup as it sped off. Myrick told them that the people in the pickup were hitting him with a pipe of some sort.

After leaving Myrick's house, Albert and his group went to appellant's home to get weapons. There were at least six people in the pickup when it returned to Myrick's house, including appellant. Appellant had a kitchen knife that was approximately eight inches in length; Albert had pliers; Edward Lomas had a pipe; Jason had a shovel head with a shortened handle; and Star Gutierrez had a tire iron. Although the record does not reflect whether Kaleb had a

_____

[1]Appellant indicates in her brief that another son, Edward Lomas, and his girlfriend, Star, were drinking with appellant at appellant's home and initially were not at the party; they later went with the group to attack Myrick. That is also this court's impression from appellant's videotaped statement. However, it appears from Modesto Lozano's testimony that Edward was at the party and was part of the group arguing with Myrick in his kitchen. The evidence is consistent that Edward was with the group when they returned to Myrick's house.

weapon, his DNA was on the metal pipe the officers found in appellant's residence; the pipe also had Myrick's blood on it.

Modesto Lozano testified that, after the Lomas group left in their blue pickup, he and his friends decided to also leave. As they were driving north and stopped at the next intersection, they saw the same blue pickup going back toward Myrick's house. The time between the blue pickup leaving and returning was about fifteen to twenty minutes. Modesto made a U-turn at the intersection and returned to Myrick's house. As he pulled up, he saw the group beating Myrick with what appeared to be pipes.

Modesto said that he tried to get to Myrick to help, but Albert grabbed Modesto by the arms and Edward hit him on the back of his head several times with a pipe. Modesto did not see anyone else fighting the blue-pickup group on Myrick's behalf, and he was unable to help Myrick. Modesto received a gash on the back of his head that required stitches and staples. As Modesto went down, he called to his friends to call the police. The blue-pickup group immediately ran back to the pickup and left. Modesto attempted to give Myrick CPR, but Myrick was dead when the fire department arrived.

When the police officers went to appellant's house at around 4:00 a.m, members of the blue-pickup group were talking and drinking beer in the living room. Appellant was drinking beer and had blood on her right pant leg; the blood was subsequently identified as belonging to Myrick. In her statement, appellant said that she still had the knife in her hand when the group returned to her house and that Edward, seeing that the knife had blood on it, took the knife from her hand. Edward told the officers that he put the knife behind the house, and the officers found it there. At the house, the officers also found the pipe used by Edward.

Myrick was found dead in the street in front of his house. Forensic evidence established that, in addition to the fatal stab wound, Myrick had severe wounds to his head from the shovel head and from the pipe. The fatal wound inflicted by appellant was a stab wound to the chest that severed the aorta. Myrick's blood was found on several areas of the blue pickup.

The lead investigator was Detective Will Ford with the Criminal Investigation Division of the Abilene Police Department. He described the knife wound as a deep penetrating stab wound that, according to the autopsy, struck Myrick's aorta or heart. The fabric on Myrick's shirt was not torn; the knife had sliced through his shirt. Detective Ford interviewed appellant at her home and then took a formal statement from her a few hours later at the law enforcement center. In her statement, appellant said that she thought the group was taking her to the store for

3

cigarettes, that she grabbed the knife for protection, and that she did not know they were going to Myrick's house. Detective Ford testified that he did not believe appellant when she told him that she took the knife for protection and that she did not know the group was going to Myrick's house that night. In the video, he pointed out to appellant that she was "going to the store" with four strong men and asked appellant why she also wanted to take a knife. Appellant said that she did not know why she took the knife.

At the disposition hearing, the trial court stated at the outset that the evidence would be relevant to two cases before the court: (1) cause no. 17,196-B (the murder charge) and (2) cause no. 16,501-B. The State had filed a motion to revoke appellant's probation in the latter cause. In cause no. 16,501-B, appellant had been charged with theft in 2007 and was on community supervision. Appellant's community supervision officer testified. She related a conversation with appellant concerning the events on the night of the murder. Appellant told her community supervision officer that she had been drinking, that she remembered being surrounded by a lot of people, that she saw a man coming toward her, and that she stabbed him.

*Analysis*

No trial court is authorized to render a conviction in a felony case consistent with Article 1.15 of the Texas Code of Criminal Procedure based upon a plea of guilty "without sufficient evidence to support the same." TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

In appellant's videotaped statement that she gave to Detective Ford, she stated that she asked her sons to take her to the store to get cigarettes when Jason and his companions returned from Myrick's house the first time. Appellant claimed that, when they loaded into Jason's pickup, she did not know they were going back to Myrick's house. "For protection," she took a kitchen knife. She sat in the bed of the pickup with Kaleb and Albert; Jason drove with Edward and Star in the cab of the pickup. During the fight at Myrick's house, appellant claimed that she remained in the pickup and saw a man trying to get into the cab to get to Star. She got out of the pickup and "stabbed the guy" as he was reaching for Star, but she "didn't mean to hurt him."

It is well-settled law that a trial court is not required to sua sponte withdraw a guilty plea and enter a plea of not guilty when the accused has waived a trial by jury and entered a guilty plea before the court. *Aldrich v. State*, 104 S.W.3d 890 (Tex. Crim. App. 2003); *Thomas v. State*, 599 S.W.2d 823 (Tex. Crim. App. 1980); *Moon v. State*, 572 S.W.2d 681 (Tex. Crim. App. 1978); *Gafford v. State*, 262 S.W.3d 452 (Tex. App.—Texarkana 2008, pet. ref'd). This rule

4

applies even if evidence is presented that raises an issue of fact as to the guilt of the accused; in such a case, the trial court, as the trier of fact, may decide the issue of the accused's guilt without withdrawing the plea. *Thomas*, 599 S.W.2d at 824; *Moon*, 572 S.W.2d at 681.

The Court of Criminal Appeals has more recently clarified this area of the law with respect to a guilty plea that is made to a jury. *Mendez v. State*, 138 S.W.3d 334 (Tex. Crim. App. 2004). The facts and appellant's arguments are substantially the same as those in *Mendez*. There was a jury trial in *Mendez* as opposed to the bench trial in the case before us; however, the *Mendez* court set forth principles that apply in both situations. It was undisputed that Mendez shot and killed the victim with whom he had been having a sexual relationship. Mendez testified that he shot her but that he did not mean to shoot her, only to scare her. Like appellant in this case, Mendez claimed that he was drunk at the time. On appeal, Mendez claimed that the trial court should have sua sponte withdrawn his guilty plea after his testimony raised an issue as to his guilt. The Court of Criminal Appeals held that the trial court had no duty to change his plea on the trial court's own motion. *Mendez*, 138 S.W.3d at 336.

The *Mendez* court noted that a defendant has the right to withdraw a plea of guilty in a timely fashion, whether the trial is with or without a jury. A defendant's decision to plead guilty "entails the waiver of some important, constitutional rights"; however, "[t]hese are 'waivable-only' rights" in the taxonomy of *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993). *Mendez*, 138 S.W.3d at 350. Once a court has fulfilled its duties and a defendant has made a valid waiver of his or her rights, "it is appropriate that the defendant be required to take some affirmative action to don the armor again." *Mendez*, 138 S.W.3d at 350. The trial court had no duty to withdraw appellant's plea of guilty sua sponte. *See Mendez*, 138 S.W.3d at 350; *Aldrich*, 104 S.W.3d at 896. Because appellant took no action to withdraw her guilty plea, she may not complain about it for the first time on appeal. *Mendez*, 138 S.W.3d at 350; *Aldrich*, 104 S.W.3d at 896; *see* TEX. R. APP. P. 33.1.

Appellant argues that the evidence was legally insufficient to sustain her conviction and that the trial court erred in not considering all the evidence because appellant's statement created a fact issue on an essential element of murder. To support an open plea of guilty, the State must introduce evidence into the record showing the guilt of the defendant, and "in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." Article 1.15. This evidence may be stipulated if the defendant consents in writing, in open court. *Id.* An appellate court will affirm the conviction if the judicial confession, the stipulation of

5

evidence, or the evidence introduced embraces every essential element of the offense charged and is sufficient to establish the defendant's guilt. *Id.*; *Menefee*, 287 S.W.3d at 13. A judicial confession, standing alone, is sufficient to sustain a conviction upon a plea of guilty if such judicial confession embraces the essential elements of the offense. *Menefee*, 287 S.W.3d 13–14; *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1980).

The evidence in this case, which included a written stipulation of evidence and a judicial confession of guilt in open court, is more than sufficient to support the trial court's finding of guilt. Even the brief summary of the evidence earlier in this opinion demonstrates that the evidence was legally sufficient to sustain appellant's conviction. The trial court, as the trier of fact, was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). The trial court no doubt found appellant's story lacking credibility. Appellant admitted that she was going with a group that included four men and Star; those four and Star had weapons. Appellant's version conflicts with Modesto's and Stephanie Delarosa's version; Stephanie was the one who called the police when Modesto called to her. The only reasonable explanation for appellant taking her kitchen knife was for it to be her weapon as the group returned to Myrick's house. The evidence of appellant's guilt is more than sufficient to support appellant's conviction.

Due process of law is not denied by a conviction on a plea of guilty when there is a strong factual basis for the plea and the defendant clearly expressed a desire to enter the guilty plea despite a professed belief in innocence. *Mendez*, 138 S.W.3d at 344. Appellant's three issues are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


July 26, 2012                                          TERRY McCALL

Do not publish. *See* TEX. R. APP. P. 47.2(b).          JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

6