TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00329-CR






Jeremy Jermaine James, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 10-1032-K368, HONORABLE BURT CARNES, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Jeremy James was charged with aggravated sexual assault of a child and with
indecency with a child by contact. See Tex. Penal Code Ann. § 22.021 (West Supp. 2012) (listing
elements for crime of aggravated sexual assault), § 21.11 (West 2011) (defining crime of indecency
with child). A trial was held, and the jury found James guilty of the crimes alleged. At the end of
the guilt portion of the trial, the district court instructed the jury to not discuss the case with anyone
and released the jury for the weekend. The jury reconvened the following Monday, and a punishment
hearing was conducted. After James and the State made their closing arguments, the jury deliberated
and sentenced James to imprisonment for twelve years for the assault charge and to imprisonment
for three years for the indecency charge.

 At the end of the hearing and after punishment was pronounced, one of the jurors,
McCay Bradford, informed the district court that he did not hear the district court's instruction to
not discuss the case and that he had discussed the case with his wife and a friend over the weekend
before the punishment hearing started. The district court, the State, and James then questioned
Bradford about the nature of the conversations and whether they had an impact on his decision
making. After Bradford was questioned, Bradford was released, and the hearing concluded without
any further comment from the district court or the parties.

 James appeals his judgment of conviction.


DISCUSSION

 In his sole issue on appeal, James contends that he is entitled to a new trial because
Bradford improperly discussed the case with individuals who were not serving on the jury.

 As a preliminary matter, we note that it appears from the record that James did not
preserve this issue for appeal. After juror Bradford informed the district court that he had discussed
the case with his wife and his friend, the State and James both questioned Bradford regarding the
types of conversations that he engaged in. However, James never moved for a new trial or made any
objection or other complaint to the district court regarding Bradford's actions or the propriety of the
jury's judgment.

 When describing the requirements for "presenting a complaint for appellate review,"
the rules of appellate procedure explain that "the record must show that" the party made the complaint
to the trial court "by a timely request, objection, or motion" and that the trial court ruled on the
complaint "expressly or implicitly" or that the trial court refused to rule on the complaint and that
"the complaining party objected to the refusal." Tex. R. App. P. 33.1(a). The requirement that a
party make specific complaints promotes "the prevention and correction of errors." Aldrich v. State,
104 S.W.3d 890, 894 (Tex. Crim. App. 2003). "When valid objections are timely made and sustained,
the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and
retrial. When a party is excused from the requirement of objecting, the results are the opposite." Id.
Given the primacy of the need to inform the court of the basis for a complaint, "[a]ll but the most
fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong,"
including many constitutional rights. Id. at 894.

 As mentioned above, James made no complaint to the district court. Moreover, the
error alleged on appeal does not fall within the two limited "categories of errors" that are exceptions
to the need to present the error to the trial court: "violations of 'rights which are waivable only' and
denials of 'absolute systemic requirements.'" Id. at 895 (quoting Saldano v. State, 70 S.W.3d 873,
888 (Tex. Crim. App. 2002)). Waivable-only rights include the right "to the assistance of counsel,
the right to trial by jury, and [the] right of appointed counsel to have ten days of trial preparation
which a statute specifically made waivable-only." Id. "Absolute, systemic requirements include
jurisdiction of the person, jurisdiction of the subject matter, [] a penal statute's being in compliance
with the Separation of Powers Section of the State constitution[,]" the requirement "that a district
court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto
laws, and certain constitutional restraints on the comments of a judge." Id.

 Even assuming that this issue is subject to appellate review, we would be unable to
sustain James's point on appeal. See Tex. R. App. P. 21.2 (stating that motion for new trial is
prerequisite to presenting issue "on appeal only when necessary to adduce facts not in the record").
Although no motion for new trial was filed in this case, the district court's actions after hearing the
testimony from Bradford evidenced its belief that a new trial was not warranted and thus effectively
served as a denial of a motion for new trial. We review the denial of a motion for new trial for
an abuse of discretion. See Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). Under
an abuse-of-discretion standard, we "do not substitute our judgment for that of the trial court, but
rather decide whether the trial court's decision was arbitrary or unreasonable." Lewis v. State, 911
S.W.2d 1, 7 (Tex. Crim. App. 1995). Further, we must defer to reasonable implied facts that the trial
court may have made when denying a motion for new trial. Charles v. State, 146 S.W.3d 204, 211
(Tex. Crim. App. 2004).

 Under the rules of appellate procedure, an individual "must be granted a new trial, or
a new trial on punishment . . . when, after retiring to deliberate, the jury has received other evidence;
when a juror has talked with anyone about the case; . . . [or] when the jury has engaged in such
misconduct that the defendant did not receive a fair and impartial trial." Tex. R. App. P. 21.3(f), (g).
If a juror discusses the case "with an unauthorized person," an injury to the defendant is presumed
and may warrant a new trial. Bokemeyer v. State, 355 S.W.3d 199, 203 (Tex. App.--Houston
[1st Dist.] 2011, no pet.). The presumption of harm may be rebutted if it is shown that the defendant
was not injured because "the case was not discussed" or because "nothing prejudicial about the
accused was said." Green v. State, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992), disavowed on
other grounds by Trevino v. State, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). If there is evidence
rebutting the presumption, reviewing courts should consider the evidence regardless of whether it
was presented by the State or by the accused. Bokemeyer, 355 S.W.3d at 203. When deciding
whether the presumption of harm has been rebutted, appellate courts "view the evidence in the
light most favorable to the trial court's ruling and defer to the trial court's resolution of historical
facts and its determinations concerning credibility and demeanor." Id. at 203-04. Moreover, the
"testimony from the juror involved in the impermissible conversation is enough evidence to support
a trial court's ruling" that the presumption had been rebutted. Quinn v. State, 958 S.W.2d 395, 402
(Tex. Crim. App. 1997).

 As mentioned above, after the jury announced the punishment for James, the district
court stated that juror Bradford informed the court that "he didn't hear my admonition . . . about not
discussing the case. And he told me when he went home that evening he did discuss the case with
his wife, not the punishment, not what we did here today, simply what happened prior to that time."
Bradford then stated that he had discussed the case with a friend from church who had served on
several juries but "discussed it in detail with" his wife. He also clarified that the conversations
occurred "after we'd reached a verdict. I had not discussed any of this with anybody before we
reached a verdict." Although Bradford related that he discussed the details of the case, he did not
state that he was given any new information about the crimes in either of his conversations.

 During the hearing, James asked Bradford, "Did your wife give you any feedback on
what you had told her, verbal or otherwise?" Bradford responded, "She did. She said guilty, absolutely
beyond a reasonable doubt." In addition, James asked whether his wife's statement had any impact
on his ability to assess a punishment, and Bradford replied, "It has an impact on my ability to think
clearly because truthfully if I'm racing through my brain trying to figure out did I make the right
choice, then that makes it harder to go through the punishment phase." In addition, James asked if
his conversation could have affected the sentence he imposed by "even a year," and Bradford replied
that it was "hard to say. I don't know."

 Regarding his conversation with his friend from church, Bradford explained that
he told his friend that he felt terrible because "this is a difficult decision." Bradford also stated that
they discussed some of the details about the case including the fact that the crime alleged in the
case was sexual abuse of a minor and that James had confessed to the crime. Furthermore, Bradford
communicated that his friend consoled him by stating that it was tough to serve on a jury in a case
involving child abuse but that "at least you had his confession."

 When asked if his conversation with his friend made it easier to impose a longer
sentence, Bradford responded, "I was toward the low end as we began negotiations" and worked
his way up through his discussions with the other jurors. Moreover, although Bradford admitted
that his friend's statement made him "[s]omewhat more confident" in his decision to find James
guilty, he explained that he did not rely on the conversation for assessing punishment because it
was his responsibility to determine a punishment. When asked whether discussing the case with his
wife made "it easier to assess some period of years or more number of years than you might have
otherwise," James answered, "I don't believe it significantly affected the outcome. . . . I do not
believe that I swung the group to a stiffer penalty." James also explained that he did not think that
discussing the case with his wife "made [him] harsher" and clarified that he did not discuss the
possible punishment range with her and that his wife never stated what she thought would be an
appropriate punishment in the case. Finally, although Bradford stated that he had an extensive
conversation with his wife about the facts of the case, he also related that he felt that the State had
"proved its case beyond all reasonable doubt. I stand behind that."

 In light of the standard of review that governs this case and in light of Bradford's
explanation summarized above, including the fact that the conversations occurred after the jury had
already found James guilty and Bradford's statements indicating that he did not rely on either
conversation when assessing punishment, we cannot conclude that the district court abused its
discretion by concluding that the presumption of harm was rebutted or by failing to order a new trial
in this case.

 For all the reasons given, we overrule James's sole issue on appeal.


CONCLUSION

 Having overruled James's sole issue on appeal, we affirm the district court's
judgment of conviction.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: August 30, 2012

Do Not Publish